**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Victor SANCHEZ (No. 02–5896) and**
**Pedro Castillo (No. 02–5898),**
**Defendants–Appellants.**

Nos. 02–5896, 02–5898.

United States Court of Appeals,
Sixth Circuit.

Dec. 23, 2003.

Thomas L. Parker, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Mark Wettle, Louisville, KY, Victor L. Sanchez, pro se, Eloy, AZ, for Defendant–Appellant.

Before GUY and GILMAN, Circuit Judges; and REEVES, District Judge.*

* The Honorable Danny C. Reeves, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

REEVES, District Judge.

Victor Sanchez and Pedro Castillo appeal their sentences after each entered a plea to conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Both Defendants assert that they are entitled to a two point reduction under section 3B1.2(b) of the United States Sentencing Guidelines for having only a minimal role in the offense. In addition, Castillo argues that he is entitled to application of the Safety Valve provision of the sentencing guidelines and that unusual, mitigating factors exist which compel a further sentence reduction. Having considered the parties' arguments, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On September 5, 2001, a confidential informant provided information to the DEA Memphis Task Force that a male Hispanic known as "Pedro" (later identified as Castillo) had approached him regarding the sale of a large quantity of methamphetamine. As a result, an undercover operation was commenced. As part of this operation, DEA officers set up a meeting between Castillo and an undercover officer at a K–Mart parking lot in Germantown, Tennessee. During the initial meeting, Castillo advised the informant that he could provide a sample of the methamphetamine and, if the sample was acceptable, his "partner" who was waiting nearby could supply the remainder of the approximate one pound amount.

Castillo advised the informant that he and his partner would have approximately six to ten pounds of methamphetamine for sale the following week. Castillo then provided a sample of the product to the undercover officer who indicated an interest in purchasing the additional quantity. Castillo also placed a telephone call to an unidentified person and was advised that the remaining amount of the initial purchase would cost $9,000. However, because the sample had been taken from the one pound amount, Castillo stated that the price would be reduced by $200. The parties agreed to meet later the same day to complete the transaction.

At approximately 9:20 p.m., the informant and undercover officer picked up Castillo at an apartment complex in Germantown. The parties then drove to another location in the complex where Castillo again placed a telephone call to an unidentified person. Following this call, Castillo advised the undercover officer and the informant that "[the supplier] is on the way." Sanchez arrived ten minutes later and told the officer that the pound of methamphetamine was approximately one ounce short. After some negotiation, Sanchez agreed to sell the remaining amount for $8,300. Sanchez and Castillo were arrested after the methamphetamine was produced.

## II. PROCEDURAL HISTORY

On September 27, 2001, a federal grand jury returned a two-count indictment charging Sanchez and Castillo with conspiracy to possess with intent to distribute and to distribute approximately 453 grams of methamphetamine in violation of 21 U.S.C. § 846 (count one) and possession with intent to distribute the same quantity of the substance in violation of 21 U.S.C. § 841(a)(1) (count two). Both defendants subsequently entered guilty pleas to count one of the indictment.

The district court conducted a sentencing hearing for each defendant on June 28, 2002. Prior to this date, each defendant submitted a written position statement regarding sentencing. In addition to his position statement, Castillo filed a number of documents for the court's consideration,

including: his statement acknowledging guilt and expressing remorse for his actions; a letter from his children; and his wife's death certificate. In their written materials and during the sentencing hearing, each defendant asserted that his respective role was either "less than the average offender" (Castillo) or that he was a "minor or minimal participant in the crime" (Sanchez). Castillo also argued that he was entitled to application of the Safety Valve, U.S.S.G. § 5C1.2, based on his acceptance of responsibility for his involvement in the crimes charged. Castillo further contended that he was entitled to a reduction due to the unusual circumstances related to the death of his wife and the need to care for his minor children.

In addressing application of the Safety Valve to Castillo's conduct, the government asserted that this defendant was not entitled to the reduction because he had not provided all relevant information. (J.A. at 66.) Rather than accept the government's offer of testimony concerning this issue, Castillo's attorney argued that the defendant had provided all of the information that he possessed and that "he is not going to manufacture anything that he doesn't know." (J.A. at 67.) Thus, while Castillo addressed the Court and explained the desperate situation presented when his wife became ill, he did not provide any additional information regarding the underlying offense. (J.A. at 72–74.)

The United States responded by stating that, during a meeting with Castillo on the date of the sentencing hearing, the defendant essentially stated that the drugs in question belonged to the co-defendant and that he did not know their source or anything else about them. The government then explained that this information was inconsistent with information known to its agents at the time of the defendants' arrest. (J.A. at 75.) Counsel for the government explained that:

> Mr. Castillo told the undercover officer during negotiations that the following week we're going to have 6 to 10 pounds of methamphetamine for you. Now in all fairness, the way that it reads here is that his partner, that is, Mr. Sanchez would have 6 to 10 pounds, but that in and of itself was the fact that Mr. Castillo could have told us again today, but yet he didn't do that. He did not acknowledge that he even knew that much or that the drugs were coming from Atlanta, which is what he hold (sic) the undercover officer at the time that the deal was taking place, that the drugs were coming from Atlanta.

(J.A. 75.) Although the assistant United States attorney offered to call an officer as a witness to confirm his representations, counsel for Castillo conceded that such testimony was not necessary because the dispute the defendant had with the government was that "he had said everything that he knows." (J.A. at 76.)

## III. ANALYSIS

### A. Standard of Review

A trial court's finding that a defendant is not a minor participant is a finding of fact that is entitled to a presumption of correctness and should be reversed only for clear error. *United States v. Cobb*, 250 F.3d 346, 348 (6th Cir.2001); *United States v. Moored*, 38 F.3d 1419, 1423 (6th Cir. 1994). A factual finding is clearly erroneous where, although there is evidence to support that finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *United States v. Tilford*, 224 F.3d 865, 868 (6th Cir.2000). In addition, the burden of

proof of establishing whether a defendant is entitled to a two level decrease as a minor participant under U.S.S.G. § 3B1.2 is upon the defendant.

Determining whether a defendant is entitled to a reduction under the Safety Valve provision of the Sentencing Guidelines is a question of fact that is entitled to a presumption of correctness which may be reversed only for clear error. *United States v. Adu*, 82 F.3d 119, 123–24 (6th Cir.1996).

**B. U.S.S.G. § 3B1.2 (Mitigating Role)**

■ The Sentencing Guidelines provide for a four level reduction for defendants who are determined to be "minimal participants" and a two level reduction if a defendant establishes that he or she is a "minor participant" in the criminal activity. United States Sentencing Guidelines, § 3B1.2 (2001). A three level reduction applies to individuals failing between the two levels. The application notes indicate that a mitigating role may not be assessed unless more than one participant is involved in the offense. *See* Application Note 2, U.S.S.G. § 3B1.2. Additionally, Application Note 3(C) to this section provides that the determination concerning a defendant's role as a minimal or minor participant is heavily dependent upon the facts of the particular case. And "as with any other factual issue, the court, in weighing the totality of the circumstances, is not required to find, based solely on the defendant's bare assertion, that such a role adjustment is warranted." *Id.*

To receive a two level reduction under Section 3B1.2(b), a defendant must establish by a preponderance of evidence that he is less culpable than *most* other participants and substantially less culpable than the average participant. *United States v.*

*Latouf*, 132 F.3d 320, 332 (6th Cir.1997) ("The Defendant must prove the mitigating factors that justify a reduction [under § 3B1.2(b) ] by a preponderance of the evidence."). Further, a defendant's eligibility for a reduction under this section is not determined "solely on the basic elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Part B, intro. cmt. Instead, the district court must determine whether the defendant was a minor participant in the relevant conduct attributable to that defendant. *United States v. Fouch*, 1997 U.S.App. LEXIS 5401, 1997 WL 130081, at *2 (6th Cir. March 19, 1997). A defendant's relevant conduct includes "all acts ... that occurred during the commission of the offense or conviction [or] in preparation for that offense...." U.S.S.G. § 1B1.3 (defining relevant conduct).

Castillo acknowledges that a minimal participant is limited to defendants that are "plainly the least culpable of those involved in the conduct of the group." *United States v. Kingston*, 922 F.2d 1234 (6th Cir.1990). And although he fails to cite any authority in support, he also asserts that, "in most jurisdictions, it has been held that [where the] less culpable defendant was a minor participant in the crime ... [it is] plain error not to give the 2–point reduction for such a defendant's role in the offense." He argues that, under the facts of this case, his co-defendant had access to large quantities of methamphetamine while he did not possess any controlled substances. Instead, he claims that he was only involved in the sale of the controlled substance. Therefore, he contends that it was clear error to find that he was a participant of equal status with Sanchez, since the only support for that conclusion came from the speculation of the person preparing the presentence report.[1]

---

1. Sanchez also asserts that the district court

erred in failing to apply a two point reduction

Sanchez argued in his presentence position statement and during sentencing that he also was entitled to a reduction in his role in the offense because he was only a courier while his co-defendant actually put the deal together. He notes that his co-defendant: (i) approached the confidential source regarding the sale of methamphetamine; (ii) first met the undercover agent to set up the transaction; (iii) provided the sample of the drug to the undercover agent; (iv) negotiated the initial price of the drug; and (v) met the agent to complete the transaction. In comparison, he asserts that he merely informed the agent that the drugs were on their way and handed over the package after agreeing on the "final" sale price for the methamphetamine.

Then and now, Sanchez relies upon Application Note 3, which states that the guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable that the average participant" and that a minor participant "means any participant who is less culpable than most other participants but whose role could not be described as minimal." While he acknowledges that the culpability determination is heavily dependent on the facts of the particular case, he states that "it must be shown that [his] culpability extended beyond that of being a mere transporter."

The district court correctly found that neither defendant was entitled to a reduction for a minor role in the offense. With respect to Castillo, the court noted that this defendant negotiated the transaction and was a vital part of it. (J.A. at 79.) In addition, the court properly cited and

adopted provisions of the addendum to the presentence report regarding Castillo, referencing the fact that this defendant's participation was not minimal. Instead, he approached the confidential informant regarding the sale of methamphetamine and was the primary contact during the transaction. Further, Castillo provided the undercover agent with a sample of the product and arranged the purchase of the remaining package by arranging the time and place for the transaction. (J.A. at 130.)

Contrary to his assertions, the fact that Castillo might not have been the most culpable does not lead to the conclusion that he is entitled to a reduction as a minor participant. *United States v. Anderson*, 33 Fed.Appx. 710, 2002 WL 169602, 2002 U.S.App. LEXIS 1847 (6th Cir. Jan. 30, 2002) (citing *United States v. Miller*, 56 F.3d 719, 720 (6th Cir.1995)); *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir.1995) (a defendant is not "automatically entitled to a minor participant reduction simply because [another defendant] could have been deemed more culpable."). When compared with the actions of the average participant in a similar scheme, Castillo cannot be said to be "less culpable" for purposes of determining whether he is entitled to a minor role reduction. *Miller*, 56 F.3d at 720.

■ And as the district court subsequently found, Sanchez also fulfilled a pivotal, vital and necessary role in the offense. (J.A. at 91–92.) Where, as here, a defendant's participation is found to be indispensable to the carrying out of the offense, he is not entitled to a role reduction. *Latouf*, 132 F.3d at 332.

---

to his offense level based upon his role as a minor participant in the charged conduct. Like his co-defendant, Sanchez asserts that he established by a preponderance of evidence

that his role in the offense leads to the conclusion that he was less culpable that Castillo who, he claims, initiated and organized the drug transaction.

### C. The Safety Valve

According to Castillo, the district court committed error by failing to find that he was not entitled to the benefit of the Safety Valve at the time of the presentence investigation because he had provided a written statement outlining his involvement in the matter. Further, he argues that the United States failed to offer any evidence to demonstrate that his factual assertions were untrue. Therefore, he contends that the district court relied upon pure speculation in determining that his statements did not meet the standards of the Safety Valve.

With respect to this issue, Section 5C1.2 of the sentencing guidelines provides, in relevant part, as follows:

(a) ... in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth verbatim below:

...

5. not later than the time of sentencing hearing, *the defendant has truthfully provided the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information shall not preclude a determination by the court that the defendant has complied with this requirement.*

(Italics added.) Application Note 8 to this section provides that, under 18 U.S.C. § 3553(f), prior to the court's determination, it shall afford the government an opportunity to make a recommendation regarding the application of the Safety Valve.

Thus, if a defendant satisfies all of the listed criteria of the Safety Valve, he can avoid a mandatory minimum sentence. In addition, if the provisions of this section are met, a defendant with a base offense level of 26 will be entitled to a two-level reduction under U.S.S.G. § 2D1.1(c)(6). In cases of drug distribution, the defendant must identify other people involved in the chain of distribution *even if* the defendant is convicted of a substantive offense only and not a conspiracy. *United States v. Maduka*, 104 F.3d 891, 894 (6th Cir. 1997). In *United States v. O'Dell*, 247 F.3d 655 (6th Cir.2001), this court held that no reduction was appropriate where the defendant did not volunteer information about the extent of his co-conspirator's drug operation. Instead, the court noted that it is not the district court's responsibility to ensure that the record contains sufficient facts from which to determine if the defendant has met this requirement. *Id.* at 675–77.

In meeting his burden, Castillo was required to take affirmative steps to disclose *all* the information in his possession under the fifth prong of the analysis. *See United States v. Adu*, 82 F.3d 119, 123–24 (6th Cir.1996). Here, the district court determined that Castillo did not provide a truthful account of all of the information known to him about the distribution of methamphetamine. While Castillo acknowledged that his co-defendant supplied the drugs, he did not provide any information about their origin. In fact, he did not disclose how he became involved with Sanchez. According to the United States, the information Castillo provided was inconsistent

with information it possessed prior to the transaction.[2]

Here, the district court evaluated the position of the parties and concluded that it "defies logic" for Castillo to claim he had provided all of the information available to him. (J.A. at 80.) As the court correctly noted, "the bottom line is he had to give all the information, all information and evidence he has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." The court properly rejected the defendant's bare assertion that he had provided all information in his possession. (J.A. at 80.)

The district court was not required to rely upon statements of the defendant if it believed that the information was incomplete or incorrect. To require such would unduly diminish the trial court's role in a critical part of the sentencing process. Instead, the court properly weighed the statements and available information and reached a sound, logical conclusion that Castillo was not entitled to have his sentence reduced by application of the Safety Valve. In light of the fact that the defendant specifically rejected the government offer of testimony regarding this issue, his assertion that "the United States failed to offer any evidence to demonstrate that his factual assertions were not true" is simply without merit.

### D. Other mitigating factors

 Castillo claims that he was motivated to become involved in the criminal activity charged in this case in an attempt to support his gravely-ill wife. The parties do not dispute that, following Castillo's arrest and prior to his sentencing, his wife passed away in a hospital in Guatemala. During sentencing, Castillo contended that, because of these circumstances and the fact that he needed to return home as quickly as possible to care for his two young children, a reduction in his sentence under section 5K2.0 of the sentencing guidelines was warranted. (J.A. at 77–78.) According to Castillo, these circumstances are of the kind that are "not adequately taken into consideration by the sentencing commission in formulating the guidelines [and] should [have] result[ed] in a sentence different from that described." Castillo argues that the district court's refusal to consider a reduction for this reason was-based on speculation and should be viewed as plain error resulting in a reversal and re-sentencing.

The United States correctly argues that the district court's decision not to depart downward is not an appealable issue because the court recognized its ability to depart, but chose not to exercise that authority. As this court has held on numerous occasions, a decision denying a downward departure may be appealed only where the trial court's refusal to depart is based on the erroneous belief that it lacked authority to do so. *United States v. Cooper*, 348 F.3d 493, 2003 FED App. 0394P (6th Cir. Nov.5, 2003); *United States v. Price*, 258 F.3d 539, 547–48 (6th Cir.2001); *United States v. Brown*, 66 F.3d 124 (6th Cir.1995), *cert. denied*, 516 U.S. 1132, 116 S.Ct. 954, 133 L.Ed.2d 877 (1996); *United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995); *United States v. Landers*, 39 F.3d 643, 649 (6th Cir.1994);

---

**2.** The United States points out that, while negotiating for the sale of one pound of methamphetamine, Castillo told the undercover officer that he and his "partner" would have 6 to 10 pounds the following week. Later, in seeking application of the Safety Valve, Castillo did not divulge information concerning the quantity, price or location of the methamphetamine.

*United States v. Vincent,* 20 F.3d 229, 239 (6th Cir.1994).

Castillo's argument that the district court's decision should be reversed because that court failed to unambiguously acknowledge that it was aware of its authority to depart ignores the clear holding in *Byrd* that

> [w]e are in full agreement with the result reached in these other circuits (that there is no duty on the trial judge to state affirmatively that he knows he possesses the power to make a downward departure, but declines to do so). We also agree with the observation recently made by the Tenth Circuit that district judges are now quite familiar with the guidelines, and an appellate court should be reluctant to "treat as ambiguous" a ruling which does not affirmatively state that the judge knew he could depart downward but failed to do so.... Rather, it should be assumed "that the Court, in the exercise of its discretion found downward departure unwarranted."

*Id.* at 145, citing *United States v. Barrera–Barron,* 996 F.2d 244, 245–46 (10th Cir.), *cert. denied,* 510 U.S. 937, 114 S.Ct. 358, 126 L.Ed.2d 321 (1993); *see also United States v. Strickland,* 144 F.3d 412, 418 (6th Cir.1998) (the district court need not explicitly state that it is aware of its discretionary authority to depart downward; the record need only make clear the court's awareness of its discretion).

In the present case, the district court explained its reasoning for finding that this case did not fall outside the heartland of cases considered by the Sentencing Commission in promulgating the sentencing guidelines. Thus, the court did not decline to depart for lack of authority to do so; rather, it did so because it determined that departure was not warranted under the circumstances presented. Addressing this argument, the district court noted that

motivation to engage in illegal activity is often brought about by dire circumstances. However, such motivation—contrasted with other reasons such as financial gain—does not support the type of reduction sought by Castillo.

A review of the sentencing hearing leads us to the firm conclusion that the district court clearly recognized its ability to depart but chose not to do so for valid reasons. (J.A. at 78–79.) Therefore, this issue is not properly subject to review through this appeal.

## IV. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment of the district court.