**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0071n.06
Filed: January 29, 2009

**No. 07-5494**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| Plaintiff-Appellee, | ) | COURT FOR THE |
| | ) | EASTERN DISTRICT OF |
| v. | ) | TENNESSEE AT |
| | ) | KNOXVILLE |
| Larico Lamar Smith, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:     MOORE, COOK, Circuit Judges; and GWIN, District Judge.[*]

Gwin, District Judge:

The instant appeal arises out of Defendant-Appellant Larico Lamar Smith's conviction for

possession of ammunition and a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).  Smith

contends, on his second appeal of his sentence, that the district court erred by imposing a four-level

sentence enhancement under Sentencing Guideline provision § 2A2.1(a)(1) after improperly finding

that Smith acted with deliberate and premeditated intent to commit murder.  Smith urges this Court

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

to vacate his sentence and remand the case to the district court for resentencing in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). For the reasons set forth below, we **AFFIRM.**

## I. Background

### *A. Facts*

After being charged with a number of similar counts, Defendant-Appellant Larico Lamar Smith pleaded guilty to two counts of possession of ammunition and a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). These offenses occurred in fall 2002 and summer 2003.

Prior to the events giving rise to the instant case, Smith was convicted, on May 30, 1995, of two felonies: aggravated assault and voluntary manslaughter. Smith committed these two crimes while he was a juvenile, but both cases were transferred to adult court and both resulted in adult felony convictions. Smith received a six-year prison sentence for the manslaughter conviction and a four-year prison sentence for the aggravated assault conviction.

In this case, on four separate occasions, Defendant Smith illegally possessed ammunition that had traveled in and affected interstate commerce. In the first offense, on September 22, 2002, Smith approached Nathan Roberts, who was sitting outside a business located at 2525 Martin Luther King Boulevard in Knoxville, Tennessee. Smith knocked Roberts to the ground and then shot him with a nine millimeter semi-automatic pistol. One round entered Roberts's leg and lodged in his pelvis area.

In the second offense, on January 18, 2003, Smith shot at Isiah Holloway, Nathan Roberts, and Christopher Cherry outside a residence located at 2717 Tarleton Avenue, Knoxville, Tennessee. A bullet fired by Smith struck Holloway in the back and seriously injured him; Holloway was

eventually transported to the University of Tennessee Medical Center and treated at the neurorespiratory unit. In the third offense, on June 20, 2003, Smith and Cebra Griffin engaged in a gun fight outside Gene's Place located at 123 Chestnut Street, Knoxville, Tennessee. During the fight, a bullet struck a bystander, Britney Goins, in the right foot and left leg. Finally, on August 5, 2003, police officers arrested Smith after shots were fired near the Walter P. Taylor housing projects in Knoxville, Tennessee. At the time of the arrest, Smith was discovered carrying an InterDynamic nine millimeter semiautomatic pistol. An ATF expert inspected the rounds of ammunition used in each shooting and gave the opinion that they had all been manufactured outside the state of Tennessee.

### B. Procedural History

On August 5, 2003, a federal grand jury indicted Defendant Smith on one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On October 21, 2003, the grand jury returned a superseding indictment charging Smith with four counts – three counts of being a felon in possession of ammunition in connection with the three shootings and one count of being a felon in possession of ammunition and firearms in connection with the fourth incident, all in violation of 18 U.S.C. § 922(g)(1).

On February 23, 2004, Defendant Smith pleaded guilty to Counts Two and Four of the superseding indictment, consistent with his plea agreement with the United States.[1] In exchange

---

[1] In the state court case underlying the January 18, 2003 offense, Defendant Smith was charged with attempted first degree murder, and he ultimately pleaded guilty to three counts of aggravated assault. He was sentenced to ten years imprisonment in the Tennessee Department of Correction as to each count, to be served concurrently.

Under Tennessee state law, "[a] person commits aggravated assault who: (1) [i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and: (A) [c]auses serious bodily injury to another; or (B) [u]ses or displays a deadly weapon; or (2) [r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and: (A) [c]auses serious bodily injury to another; or (B) [u]ses or displays a deadly weapon." TENN. CODE ANN. § 39-13-102 (West 2009). Under Tennessee state law, "[a] person commits assault who: (1) [i]ntentionally, knowingly or recklessly causes bodily injury

3

for Smith's guilty plea, the Government agreed to move for the dismissal of the two remaining counts in the superceding indictment. Smith did not waive his right to appeal in the plea agreement.

In calculating the offense level, the presentence report ("PSR") first recommended a base-offense level of twenty-four pursuant to U.S.S.G. § 2K2.1(a)(2), with an increase of two levels for possession of three firearms, U.S.S.G. § 2K2.1(b)(1)(A), and an additional increase of four levels for use of a firearm during the commission of another felony, U.S.S.G. § 2K2.1(b)(5), in this case the commission of assault with intent to commit murder and aggravated assault. The probation officer thus recommended an adjusted offense level of thirty.

The PSR then noted that U.S.S.G. § 2K2.1(c)(1) mandated the application of U.S.S.G. § 2A2.1(a)(1), "as the criminal conduct involved deliberate and premeditated criminal conduct during the commission of the shooting on August 5, 2003." The base offense level became twenty-eight. The PSR then recommended an additional four level increase pursuant to U.S.S.G. § 2A2.1(b)(1)(A) since the victim sustained life-threatening injuries. The resulting total offense level was thirty-two. Because this computation resulted in a higher offense level, the PSR recommended thirty-two as the appropriate adjusted level.

Finally, the PSR recommended a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). Including the three-level downward adjustment for acceptance of responsibility, the resulting offense level was twenty-nine, which, combined with the Defendant's criminal history category of IV, yielded a guideline range of 121-151 months. Neither party objected to the PSR.

---

to another; (2) [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." TENN. CODE ANN. § 39-13-101 (West 2009).

The district court sentenced Smith on May 18, 2004. Notwithstanding the PSR, the United States made no motion for a one-level downward adjustment for acceptance of responsibility. At the sentencing hearing, the United States advised Defendant Smith that it did not believe an extra reduction in the offense level calculation was warranted. The Government stated that by the time Smith had decided to plead guilty, the United States had already taken extensive steps to prepare for trial, including contacting and preparing witnesses.

Arguing that he should receive the extra reduction, Defendant Smith requested a continuation of the sentencing hearing and it was then reset for May 24, 2004. Prior to the rescheduled hearing, the probation officer revised the PSR to reflect the fact that the United States would not be moving for a three-level decrease for acceptance of responsibility. Instead, the PSR recommended a two-level reduction. Smith's total offense level was determined to be thirty resulting in a guideline range of 135-168 months.

On May 24, 2004, the date of sentencing, Smith filed a motion to reduce the sentence, claiming that the United States had broken its promise, allegedly made during plea negotiations, that it would move for reduction of an additional level for acceptance of responsibility. The United States denied that it had made any promises to Smith; it further stated that the Government had expended significant time and resources meeting with groups of witnesses – a different set for each of the four separate incidents – and in trial preparation.

The district court denied Smith's motion. Finding the appropriate offense level to be thirty, and finding a criminal history category of IV, the court determined that the appropriate guideline range was 135 to 168 months. The court sentenced Smith to 151 months, stating that this sentence, reflecting the middle of the guideline range, would afford adequate deterrence and would provide

just punishment.

Defendant Smith timely appealed the sentence. On appeal, Smith argued that the district court erred in denying the three-level reduction of responsibility under U.S.S.G. § 3E1.1(b). This Court vacated the sentence and remanded to the district court for re-sentencing in light of the Supreme Court's decision in *Booker* because Smith's sentence exceeded "the range authorized by his plea agreement and the facts admitted during his plea colloquy." *United States v. Smith*, 429 F.3d 620, 626 (6th Cir. 2005).

In preparation for Smith's resentencing, the probation officer provided the parties with the PSR that reflected a two-level reduction for acceptance of responsibility, a total offense level of thirty, and a guideline range of 135-168 months.[2] The United States did not object to this PSR, but Smith filed four objections, contending that one of the paragraphs contained in the PSR was vague and that the application of the specific offense characteristics or enhancements determining the total offense level violated his Fifth and Sixth Amendment rights.

On April 16, 2007, the district court resentenced Defendant Smith. At the sentencing hearing, the United States presented two witnesses: James Murray, a duty investigator for the Knoxville Major Crimes Division, and Sheila Duncan, a nurse manager at the University of Tennessee Medical Center Emergency Department. Officer Murray testified regarding the January 18, 2003 shooting of Isiah Holloway, Nathan Roberts, and Christopher Cherry. Specifically, Murray indicated that this incident appeared to be "an ambush-type shooting in which the suspects came from behind the house." Nurse Duncan testified about the extent of Holloway's injuries including

---

[2] This PSR was substantially identical to the revised PSR that was provided to the parties immediately prior to Smith's sentencing hearing on May 24, 2004.

a collapsed lung, a liver injury, and a blood clot.

After the conclusion of the hearing, the district court overruled Smith's objections to the PSR, made findings of fact regarding the characteristics determining Smith's total offense level,[3] considered the factors in 18 U.S.C. § 3553(a), and once again sentenced Smith to 151 months in prison. Smith timely appealed the sentence.

## II. Analysis

Defendant Smith asserts, for the second time on direct appeal, that his sentence should be vacated and his case should be remanded to the district court for resentencing in view of the Supreme Court's decision in *Booker*. We find that the district court did not abuse its discretion in making findings of fact relating to the characteristics determining Smith's total offense level and that Smith's sentence was both procedurally and substantively reasonable. Accordingly, we affirm Smith's sentence and decline his request to vacate and remand.

After *Booker*, we review a district court's sentencing determination for reasonableness "'under a deferential abuse-of-discretion standard.'" *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 128 S.Ct. 586, 591(2007)). A reasonableness analysis must take into account both the procedural and the substantive aspects of the sentence. *See Gall*, 128 S.Ct. at 597; *United States v. Thomas*, 498 F.3d 336, 339 (6th Cir. 2007).

"Procedural reasonableness requires that a district court ' . . . properly calculate the guidelines range, treat the guidelines as advisory, consider the § 3553(a) factors[,] and adequately explain the chosen sentence – including an explanation for any variance from the guidelines range.'" *United*

---

[3] Following the conclusion of the witness testimony at the resentencing hearing, Smith, as well as his attorney, objected vigorously to the factual findings that increased his base offense level.

7

*States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (citing *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) (quoting *Gall*, 128 S.Ct. at 597)). This Court has, however, "required [district] courts only to provide enough detail to allow an appellate court to conduct 'meaningful appellate review' and to conclude that the district court adequately considered the relevant statutory factors." *Id.* at 630 (citations omitted).

If we determine a sentence to be procedurally sound, we then examine its substantive reasonableness, again under an abuse-of-discretion standard. *See Presley*, 547 F.3d at 629. "[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Brown*, 547 F.3d 592, 594 (6th Cir. 2008) (citing *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)). This Court applies "a rebuttable appellate presumption of reasonableness to a sentence that falls within a properly calculated guidelines range." *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). Further, "'[t]he fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.'" *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) (citing *Gall*, 128 S.Ct. at 597).

Smith apparently does not contend that his sentence is procedurally unreasonable. Instead, Smith argues that it is substantively unreasonable because the district court enhanced the sentence based on the following judge-found facts: (a) Smith used a firearm in the course of committing an assault "with intent to commit murder," U.S.S.G. § 2A2.1(a)(1), and his criminal conduct during the commission of the shooting was "deliberate and premeditated"; and (b) the victim of the assault

sustained life-threatening injuries.[4]  While Smith conceded that he may have caused life-threatening injury to Isiah Holloway,[5] he did not admit – in the plea agreement, during his plea colloquy, or at sentencing – that he had acted "with intent to commit murder" or that his conduct was "deliberate and premeditated."

With these enhancements, Smith's offense level was set at thirty-two, which yielded a sentencing range of 168-210 months.  With a two-level reduction for acceptance of responsibility, Smith's sentencing range became 135-168 months.  Absent the district court's factual findings, Smith's offense level would have been twenty-four, resulting in a sentencing range of 77-96 months or 62-78 months with a two-level reduction for acceptance of responsibility.  By imposing a sentence of 151 months, the district court sentenced Smith to an additional 55 months of imprisonment beyond the 96 months authorized by the plea agreement alone.

Despite the fact that Smith's sentence exceeds the range authorized by his plea agreement and the facts admitted during his plea colloquy, we hold that it is not substantively unreasonable.  Post-*Booker*, the Supreme Court has held that sentencing judges are not only permitted, but *required*

> to make factual findings and to base their sentences on those findings.  The federal criminal statutes generally set out wide sentencing ranges, and thus in each case a sentencing judge must use some criteria in selecting the sentence to be imposed. In doing this, federal judges have generally made and relied upon factual determinations about the nature of the offense and the offender – and it is impossible to imagine how federal judges could reasonably carry out their sentencing responsibilities without making such factual determinations.

*Cunningham v. California*, 549 U.S. 270, 301 (2007).  Moreover, this Court has squarely rejected

---

[4] The PSR also suggested an alternative calculation of the offense level, which it ultimately did not recommend. In that calculation, the sentence would have been enhanced two points based on a finding that Smith had possessed three firearms, whereas he pleaded to having possessed only two.

[5] Smith did agree with the Government's summary, recited at the plea colloquy, that "Holloway . . . was struck in the back and was rushed to the hospital for medical treatment."

the contention that *Booker* and *Blakely v. Washington*, 542 U.S. 296 (2004) "require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt. . . . Where . . . a district court understands that the [g]uidelines are only advisory, judicial fact-finding done by the preponderance of the evidence [standard] is permissible." *United States v. Sexton*, 512 F.3d 326, 329-330 (6th Cir. 2008); *see also United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) ("Because the guidelines are now advisory and not mandatory, a [d]istrict [c]ourt may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates his sentence.").

Given the amount of persuasive evidence presented to the district court in this case regarding the relevant sentence enhancement factors, we find that the court's factual findings pass muster under the preponderance of the evidence standard and therefore the district court did not abuse its discretion in sentencing Defendant Smith.

First, Smith had already acknowledged that he knowingly, if not intentionally, assaulted Isiah Holloway, Nathan Roberts, and Christopher Cherry, causing them bodily injury or to reasonably fear imminent bodily injury. *See* TENN. CODE ANN. § 39-13-101; TENN. CODE ANN. § 39-13-102. Smith pleaded guilty to three counts of aggravated assault in connection with the January 18, 2003 shooting incident before a Tennessee state court and the same court sentenced Smith to ten years in prison on each count, to be served concurrently. Thus, Smith had also effectively admitted that he either caused Holloway, Roberts, and Cherry serious bodily injury or used or displayed a deadly weapon during the commission of the crime (or both). *See* TENN. CODE ANN. § 39-13-101; TENN. CODE ANN. § 39-13-102.

Second, Smith's argument that an unidentified shooter, as opposed to Smith, shot Holloway

10

in the back and then fired at the car where Roberts and Cherry were sitting was not persuasive in light of the fact that Smith previously pleaded guilty to carrying out an aggravated assault on Roberts in September 2002. During the commission of the September 2002 aggravated assault, Smith knocked Roberts to the ground and then shot him with a nine millimeter semi-automatic pistol. One round entered Roberts's leg and lodged in his pelvis area. Based on this crime and the accompanying conviction, it is clear that Smith had previously attempted to at least injure, if not kill, Roberts, thereby greatly increasing the likelihood that Smith – and not another individual – shot at Roberts and his companions on January 18, 2003.

Finally, prior to sentencing Smith, the district court heard testimony from two witnesses who spoke to the sentence enhancement factors in question. Officer Murray testified that Smith's January 18, 2003 shooting of Holloway, Roberts, and Cherry appeared to be "an ambush-type shooting in which the suspects came from behind the house" and that Holloway was shot in the back while trying to run away from the suspects. Murray also stated that this incident involved the suspects advancing on and firing directly into the vehicle where Roberts and Cherry were sitting. This testimony permitted a finding by a preponderance of the evidence that Smith had acted "with intent to commit murder" or that his conduct was "deliberate and premeditated." Additionally nurse Duncan described the extent of Holloway's injuries including a collapsed lung, a liver injury, and a blood clot. This testimony permitted a finding by a preponderance of the evidence that Smith caused life-threatening injury to Holloway.

The district court considered Smith's objections to the PSR report, as well as Smith's objections to the district court's fact-finding, prior to sentencing Smith. Moreover, the district court took into account the nature and the circumstances of the offense, the history and characteristics of

11

the Defendant, and the 18 U.S.C. § 3553(a) factors in imposing a middle-of-the-guideline-range sentence. Thus, we hold that the district court's sentence was both procedurally and substantively reasonable in light of its proper calculation of the guidelines range, treatment of the guidelines as advisory, clear consideration of the § 3553(a) factors, adequate explanation of the sentence, and accordance of the proper weight to all pertinent and permissible factors.

## IV. Conclusion

For the reasons set forth above, we **AFFIRM** Defendant Larico Lamar Smith's sentence.