**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0324n.06

**No. 08-4290**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 17, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

      **Plaintiff-Appellee,**

v.

WILLIAM L. AMOS,

      **Defendant-Appellant.**

_____/

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

BEFORE:    GUY, CLAY and McKEAGUE, Circuit Judges.

**CLAY, Circuit Judge.**  Defendant William Amos challenges his conviction and sentence for attempting to kill a federal agent, in violation of 18 U.S.C. § 1114; assaulting a federal agent, in violation of 18 U.S.C. § 111; using a firearm during a crime of violence, in violation of 18 U.S.C. § 924 (c)(1)(A); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(1). Amos argues that there was insufficient evidence to support the conviction and that the district court abused its discretion in declining to sentence him below the applicable United States Sentencing Guideline.

For the reasons set forth below, we **AFFIRM** the judgment and sentence of the district court.

**BACKGROUND**

At 1:00 p.m. on July 18, 2007, Defendant William Amos arrived at a house at 150 East Judson Avenue, in Youngstown, Ohio, in order to participate in a fake drug deal.  Earlier that day,

Amos and his friend Michael Brogden had devised a plan wherein Brogden and Amos would pretend to sell cocaine to a drug buyer, but would instead take the buyer's money and run away before the buyer realized that the cocaine was not real.

At 3:00 p.m., Brogden's uncle, Joseph Cambridge, arrived at the Judson house with the drug buyer, undercover Alcohol, Tobacco and Firearms ("ATF") special agent John Smerglia. At that time, no one but Cambridge, who had been acting as a confidential informant for the ATF, was aware that Agent Smerglia was a federal agent. Prior to July 18, Cambridge had set up several controlled purchases with Agent Smerglia, and it was Cambridge's understanding that another drug dealer, Ike Lake, would be at the Judson house to sell cocaine to Agent Smerglia on that day.

When Cambridge and Agent Smerglia arrived, Brogden greeted them outside and, after a brief discussion, the three men entered the Judson house. Once inside, Agent Smerglia noticed that Lake was not present; instead, Amos was introduced as the drug dealer. Though this raised some concern for Agent Smerglia, he made a decision to continue with the planned purchase. Unbeknownst to Agent Smerglia, Amos and Brogden were both armed.[1] Unbeknownst to the other men, Agent Smerglia was wired with a voice recorder and transmitter, and was backed-up by an ATF team stationed around the corner.

Once all of the men had assembled in the dining room, Amos turned to Cambridge and asked, "what you need?" Agent Smerglia responded that he wanted to purchase two ounces of crack cocaine. Amos told Agent Smerglia that the price was $2,300 and asked for the money. At that

---

[1]There is some dispute regarding whether Cambridge was also armed. While Amos' testimony implied that he was, Agent Smerglia claimed that he searched Cambridge before they entered the Judson house and did not locate any weapons.

2

point, Agent Smerglia told Amos that he had left the money in the car for safekeeping and that he would go out and get it. Agent Smerglia also told the assembled men that he was going to get a digital scale from the car, so that he could double-check the quantity of the crack cocaine. Agent Smerglia then left the house and went to his car.

After Agent Smerglia left, both Amos and Brogden apparently became nervous that they would not be able to pull off the robbery as planned. They had a brief conversation about their growing unease, but decided to proceed with the bogus transaction.

Agent Smerglia returned to the dining room with a scale and the money, which was in a Crown Royal bag in his jacket pocket. Amos was becoming increasingly agitated, in part because of Agent Smerglia's appearance (describing him at trial as a "big swelled up mother f'er") and also because Amos found it suspicious that Agent Smerglia would carry money in a liquor bag. Amos began the process of transferring the "cocaine," which was actually flour, into plastic bags for Agent Smerglia to weigh. Upon seeing Amos pour the flour-like substance into the bags, Agent Smerglia asked Amos "is that all you got?" and told him that the substance was "junk."

Amos testified that he and Cambridge then exchanged a knowing look, at which point Cambridge began to reach in his waistband as if for a gun, an action which precipitated the ensuing commotion. All of the men began yelling at one another. Agent Smerglia testified that he saw Amos reach for a gun. Seeing this, Agent Smerglia ran from the house through the side door, at the same time calling into his transmitter for help. Soon thereafter, Amos ran out of the same door, trailing Agent Smerglia.

3

Agent Smerglia testified that he then heard someone yelling at him to "sit [his] ass down," followed by the sound of a gunshot. He felt his arm grazed by a bullet. Agent Smerglia turned, saw Amos shooting at him, and attempted to return fire with his own weapon, which jammed after the first round. Agent Smerglia continued to run away from the house until he found cover.

While shooting, Amos continued to run from the house and away from Agent Smerglia. As Amos was fleeing, he saw the backup ATF team converging on the Judson house and, recognizing the team as law enforcement officers, pointed towards the Judson house to create a diversion.[2] Once farther down the street, Amos discarded the gun and the "cocaine," and continued on to the house of a friend.

The backup ATF team arrived at the Judson house and found that Agent Smerglia had sustained a gunshot wound through his left foot. Agents brought Agent Smerglia to the hospital, where he was treated for his injuries and released.

That evening, Amos became aware of Agent Smerglia's true identity, and that he was now the subject of a manhunt. Later that night, Amos surrendered himself to the Mahoning County Sheriff's Department.

Upon investigation, officers found Amos' discarded weapon, along with the bag containing the "cocaine." Officers presented a photo array of suspects to Brogden, Cambridge, Agent Smerglia,

---

[2]Amos testified that he saw three Crown Victoria cars "tailing each other . . . real fast," which he recognized as a "task force basically, they undercover, or whatever." When the officers in the cars spotted Amos and began to slow, Amos testified that he "knew what it was about. It was shots as clear as day. It's broad daylight. I just got in a shootout. And I see seconds later task force come around the corner. And I knew what they was coming for. They came because they heard shots. So I pointed to the scene. So basically when they all road [sic] past, that's when I was running . . . ." (R. 68: Trial Tr. at 23-24.)

4

and Merrill Pratt, an eyewitness—all identified Amos as the shooter. A ballistics expert compared the bullets recovered from the scene and from Agent Smerglia's foot, and concluded that the bullets matched Amos' discarded gun.

On July 24, 2007, Amos was indicted on five counts: attempted murder of a federal agent, in violation of 18 U.S.C. § 1114; assault on a federal agent, in violation of 18 U.S.C. § 111; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922 (g)(1); and two counts of use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924 (c)(1)(A). Amos was arraigned and pleaded not guilty on July 25, 2007.

Amos went to trial before a jury on May 19, 2008. Amos' testimony regarding the events of July 18, 2007, tracked that of the other witnesses present that day, with the exception that Amos testified that he only began shooting at Agent Smerglia after the agent opened fire on him. On May 23, 2008, Amos was convicted of each of the five counts.

In his Presentence Investigation Report ("PSR"), Amos' base offense level was set at 33, pursuant to United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2A2.1(a)(1); he received a two point enhancement because the victim sustained a serious bodily injury. Therefore, his adjusted offense level was 35.

Amos had four criminal history points, but received an additional two points because he committed the instant offense less than two years after the date of his last release from custody. This correlated to a Criminal History Category III. Amos' recommended Guidelines sentence was therefore 210 to 262 months of incarceration.

The statutory maximum sentence for the attempted murder and assault charges was 20 years (240 months), and the statutory maximum sentence for the felony firearm charge was 10 years (120 months). Amos was also subject to a statutory sentence of 10 years to life for the use of a firearm during a violent crime, pursuant to 18 U.S.C. § 924(c)(1)(A), to run consecutively to any other term of imprisonment. Therefore, pursuant to U.S.S.G. § 5G1.1(c)(1), Amos' recommended sentencing range was 330 to 360 months of imprisonment

On August 18, 2008, Amos was sentenced to 330 months of imprisonment and five years of supervised release. On August 27, 2008, Amos filed this timely appeal.

## DISCUSSION

I.     **Reasonableness of Sentence**

A.     **Standard of Review**

We review a sentence imposed by the district court for abuse of discretion. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). We review first for procedural reasonableness and then for substantive reasonableness. *United States v. Barahona-Montenegro*, 565 F.3d 980, 983 (6th Cir. 2009). Within-Guidelines sentences are afforded a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

If a party fails to raise an objection to the district court's procedure at the time of sentencing, then our procedural reasonableness review is for plain error only. *See United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009). Plain error is "(1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Wallace*, 597 F.3d 794, 802 (6th

Cir. 2010) (citing *Vonner*, 516 F.3d at 386). Amos raised no objection to the form or extent of the district's court explanation of its sentencing considerations at the time of the sentencing hearing. Consequently, we review for plain error. *See United States v. Bostic*, 371 F.3d 865, 873 (6th Cir. 2004).

In determining if a sentence is procedurally reasonable, we consider whether the district court "committed [a] significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall v. United States*, 552 U.S. 38, 51 (2007).

At the time of sentencing, the district court must articulate the rationale underlying its sentence in a way that creates a record sufficient for meaningful appellate review. *See Bolds*, 511 F.3d at 579-80. In addition, in those instances where a defendant raises a non-frivolous argument in favor of a lower sentence "the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Richardson*, 437 F.3d 550, 554 (6th Cir. 2006). But, "[a] sentencing judge has no more duty than we appellate judges do to discuss every argument made by a litigant; arguments clearly without merit can, and for the sake of judicial economy should, be passed over in silence." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006) (internal quotations omitted).

"A sentence is substantively unreasonable if the district court 'selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an

unreasonable amount of weight to any pertinent factor.'" *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (quoting *United States v. Caver*, 470 F.3d 220, 248 (6th Cir. 2006)).

## B.      Procedural Reasonableness

Amos argues that the district court erred when it sentenced him to 330 months of incarceration because it "made little or no mention of [several mitigating § 3553(a) factors raised by the defense], particularly the unique facts of this case which led to the shooting." Included in these facts are "evidence that Mr. Amos had no idea that the person he returned gunfire to was a federal agent" and evidence that Amos "immediately turned himself in and expressed great concern for the officer's condition" after learning that Agent Smerglia had been shot.

In imposing a sentence, the district court must consider whether the sentence it imposes is "sufficient, but not greater than necessary":

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

In this case, after the district court accurately calculated Amos' Guidelines sentencing range and reviewed the 18 U.S.C. § 3553(a) factors, it pronounced the following:

> The Court has reviewed the thorough presentence report. I've reviewed the Defendant's Sentencing Memorandum, and the Government's response. And I've listened to both counsel and to Mr. Amos. . . . I have the benefit of having sat through

the trial. So I heard all the witnesses, including Mr. Amos. Mr. Amos, you are fortunate . . . as Ms. Kelley mentioned, that your shots only hit the Agent in the foot.

There was evidence there was a second shot, which I believe the testimony was that it grazed the Agent's upper arm and obviously that was a lot closer to the center of his chest and body and could have been a much more grave or possibly even a fatal injury.

And this occurred barely a year after you were released from prison after receiving a two-year sentence for burglary. So you certainly should have learned your lesson that you don't engage in drug dealing, having a weapon. You weren't even permitted to have a weapon, having been a convicted felon, let alone use one to commit another crime. So it's clear to me that a very significant sentence is warranted.

. . . [W]hen someone does what you do and intentionally shoot at an undercover agent, even though you didn't know who he was, you intentionally shot at an individual, and it turns out to be a Federal Agent, a very serious and significant sentence is warranted because—obviously, to deter you, but more important, to deter anyone else. And so any other individual who's in a situation like that and just sort of takes a shot is going to take a chance maybe it's an undercover agent and he or she is going to prison for a very long time.

So in this case, I find that a sentence within the advisory range is sufficient but not greater than necessary to meet the statutory purposes of sentencing. We've got a fairly narrow range, and because your only prior significant prison sentence was two years, I believe a sentence at the low end of the range is sufficient but not greater than necessary.

(Sent. Tr. at 10-12.)

On this record, it is clear that the district court carefully reviewed the arguments presented in Amos' sentencing memorandum, and rejected or accepted those arguments as appropriate. In that memorandum, Amos first argued that the consecutive, mandatary 10-year sentences for the two weapons charges should be merged; the district court acknowledged and accepted this argument. (*Id.* at 3 ("I have received and reviewed the Defendant's Sentencing Memorandum and the Government's response. I do agree with [Defendant's] point that certain of the counts merge;

particularly, Counts 2 and 4. And that it's appropriate to give only one sentence for use of a firearm during a crime of violence").)

Secondly, Amos argued that the district court should consider the particular circumstances of the crime, namely his lack of knowledge of Agent Smerglia's true identity as a federal agent, as weighing in favor of a less lengthy sentence. The district court, at the time of sentencing, made clear that it was fully aware of all of the details surrounding the crime. (*Id.* at 10 ("I have the benefit of having sat through the trial. So I heard all the witnesses, including Mr. Amos").) Additionally, the district court apparently credited Amos' assertion that he was unaware of Agent Smerglia's identity at the time of the shooting. (*Id.* ("[W]hen someone does what you do and intentionally shoot at an undercover agent, even though you didn't know who he was . . . .").) Therefore, the record reflects that the district court considered Amos' ignorance as to Agent Smerglia's identity.

Amos now contends that the district court should have given more weight to evidence that "if he had known [that Agent Smerglia was a federal agent], he would not have fired and evidence that shot was fired in a haphazard manner and out of fear alone." At sentencing, the district court addressed this argument, stating that the jury rejected the premise that Amos acted in self-defense, (*id.* at 6), and indicating that the court similarly did not credit Amos' self-defense claim. (*Id.*) Amos raised no new or additional arguments during sentencing, and the district court was under no obligation to revisit or re-adjudicate each element of the crime before it imposed sentence.

Finally, Amos requested that the court give special consideration to his age at the time of the crime—he was 22—and background in crafting an appropriate sentence. While the district court was aware of Amos' age and background from its review of the PSR, the court also weighed Amos'

criminal history and the fact that he had committed a serious felony on the heels of being released from prison for another serious felony. (*Id.* ("And this occurred barely a year after you were released from prison after receiving a two-year sentence for burglary").) That the district court did not weigh the factors raised by Amos in the manner that he would have liked to have had them weighed does not indicate that the court acted improperly or disregarded Amos' arguments.

Furthermore, the record does not suggest that the district court was unaware of its ability to grant a sentence outside of the Guidelines range.[3] While Amos argues that this "mere recitation of the necessary language" does not suffice to show that the district court was aware of its power to sentence outside of the range, recitation is the only indication that a district court is able to provide, short of actual performance. And, it should go without saying, a district court is not obligated to apply its discretion favorably to a defendant in order to demonstrate to the defendant that it understands that it has the power to do so. *See United States v. Clark*, 385 F.3d 609, 623 (6th Cir. 2004) ("The Court presumes that the district court understood its discretion to depart, 'absent clear evidence in the record to the contrary.'") (quoting *United States v. Crouch*, 288 F.3d 907, 910 (6th Cir. 2002)).

## C. Substantive Unreasonableness

Amos raises no additional arguments to support his claim that the sentence imposed by the district court was substantively unreasonable. Under 18 U.S.C. § 924(c)(1)(A), the district court was required to impose a 120-month minimum sentence, to run consecutively to any other sentence

---

[3]To the contrary, the district court stated, "I want to go over the Advisory Guidelines. Of course, they are only advisory, but the Court's required to compute the advisory Guideline range correctly." (Sent. Tr. at 4.)

imposed, for the use of a firearm during a crime of violence. In order to reach a sentence of 330-months of incarceration, the district court necessarily sentenced Amos at the very bottom of the advisory Guidelines range on his remaining convictions.

Amos does not contend that the district court weighed any impermissible factors, nor does he claim that the sentence was arbitrary. As discussed above, we find that the district court considered all pertinent § 3553(a) factors, including those raised by Amos in his Sentencing Memorandum and before the court at his sentencing hearing. And, while the district court did not weigh the § 3553(a) factors to Amos' satisfaction, it did not weigh any factor unreasonably.

### D. Summary

Therefore, we find that the within-Guidelines sentence of 330 months of incarceration imposed by the district court was neither procedurally nor substantively unreasonable, as the district court considered all § 3553(a) factors, addressed Amos' reasonable arguments for a lower sentence, and sufficiently articulated the reasons for its decision. Thus, the district court did not abuse its discretion in sentencing Amos.

## II. Insufficiency of the Evidence

### A. Standard of Review

We review a defendant's claim of insufficiency of the evidence to determine whether, viewing the evidence in the light most favorable to the prosecution, *United States v. White*, 492 F.3d 380, 393 (6th Cir. 2007), "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In our inquiry, we are required to resolve all conflicts in testimony in favor of the prosecution, *United States v.*

*Bashaw*, 982 F.2d 168, 171 (6th Cir. 1992), and "[w]e are bound to make all reasonable inferences and credibility choices in support of the jury's verdict." *United States v. Hughes*, 895 F.2d 1135, 1140 (6th Cir. 1990).

### B.      Analysis

Attempted murder of a federal agent is governed by 18 U.S.C. § 1114, which criminalizes "[w]hoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties . . . in the case of attempted murder or manslaughter, as provided in section 1113." 18 U.S.C. § 1114(3).

Section 1113 defines murder as:

> [T]he unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse, burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.

18 U.S.C. § 1113. "Since the statute does not specify the elements of 'attempt to kill,' they are those required for an 'attempt' at common law . . . which include a specific intent to commit the unlawful act." *Braxton v. United States*, 500 U.S. 344, 351 n.1 (1991) (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)). Neither the statute criminalizing the attempted murder of a federal officer nor that criminalizing assault upon a federal officer "can[] be construed as embodying an

unexpressed requirement that an assailant be aware that his victim is a federal officer." *United States v. Feola*, 420 U.S. 671, 684 (1975).

Amos argues that "a rational finder of fact could not have found all of the necessary elements of attempted murder [of a federal agent]" as "there was a lack of evidence of specific intent to kill, as well as the additional element of malice aforethought." While Amos presents this argument quite skeletally, it is apparently premised upon Amos' factual assertions that he "fired in a random and haphazard manner," which he argues cuts against intent; and that "the actions of the defendant were during '. . . a sudden quarrel, heat of passion, or provocation,'" which he argues cuts against a finding of malice aforethought.

Both of these assertions are based solely on the testimony of Amos himself, and both were contradicted by the evidence at trial. As discussed above, all conflicts in testimony are resolved in favor of the prosecution, all credibility questions are viewed in the light most supportive of the jury's verdict, and all reasonable inferences are drawn in the prosecution's favor. The prosecution presented evidence through Agent Smerglia's testimony, which the jury found convincing, that Amos followed Agent Smerglia from the Judson house, commanded him to stop running, and then opened fire on him. The forensic evidence also strongly supported the prosecution's version of events.

Amos' assertion that no rational juror could find the element of intent because he "fired in a random and haphazard manner," is not supported by anything other than his assertion. While Amos may not have taken careful and studied aim at Agent Smerglia, the record is clear that Amos fired his weapon twice, and in doing so managed to hit or graze Agent Smerglia twice. The record

also shows that, while there were five men in the Judson house at the time that the transaction went awry, Amos only aimed at and shot Agent Smerglia.

The record also does not support a finding that Amos did not possess malice aforethought. In his brief, Amos cites the definition of "malice aforethought" provided by the district court in its jury instructions at trial, wherein it stated that, "the term malice aforethought means an absence of a sudden quarrel, heat of passion, or provocation."[4] The souring of the drug deal, Amos contends, establishes the presence of passion, provocation and a quarrel.

While it may be arguable that there was a "sudden quarrel" inside the Judson house, that quarrel would have naturally come to an end (as to Agent Smerglia, at least) had Amos not followed Agent Smerglia from the house onto the street. Passions, if inflamed, would have died down, and whatever provocation Amos claims to have perceived would have ceased to exist. Instead, Amos made a conscious choice to follow Agent Smerglia from the house through the side door. It is in that moment that a reasonable jury could, and we presume did, find the presence of malice aforethought.

Finally, counter to Amos' assertions, the fact that Amos shot twice and hit twice—while Agent Smerglia was running in the opposite direction, searching for cover, and unsuccessfully attempting to return fire—suggests that he was not engulfed in a passion of the kind understood to cast doubt on the presence of malice aforethought. Instead the evidence suggests that, while events may have transpired in fairly quick succession, enough time elapsed for Amos to collect himself,

---

[4]This instruction is consistent with both the modern and common law understanding of the definition of malice aforethought. *See Mullaney v. Wilbur*, 421 U.S. 684, 696 (1975) (stating "the fact at issue here–the presence or absence of the heat of passion on sudden provocation–has been, almost from the inception of the common law of homicide, the single most important factor in determining the degree of culpability attaching to an unlawful homicide.").

15

decide to pursue Agent Smerglia from the house, command the agent several times to stop running (or to "sit his ass down"), take aim and shoot twice. Amos was then able to not only calmly flee the scene, but had the presence of mind seconds after the incident to deflect the attention of the ATF backup team from himself, and to dispose of both the weapon and the evidence of the drug transaction.

Accordingly, a rational trier of fact could have found that the evidence presented at Amos' trial established the presence of both intent and malice aforethought, and was sufficient to support his conviction.

## CONCLUSION

The district court did not abuse its discretion in sentencing Defendant to a 330-month term of imprisonment on convictions for attempted murder of a federal agent, assault on a federal agent, being a felon in possession of a firearm, and use of a firearm during a crime of violence; and the evidence presented at trial was sufficient to find each element of the offenses. We hereby **AFFIRM** the judgment and sentence of the district court.