NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0563n.06

No. 12-5700

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Jun 10, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| ERIC SANCHEZ, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BATCHELDER, Chief Judge, SUHRHEINRICH and SUTTON, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Defendant Eric Sanchez pleaded guilty to possession of firearms by a convicted felon, and possession of stolen firearms. On appeal he challenges several aspects of his sentence. We AFFIRM.

I.

In late April 2009, six firearms were stolen from Joe Brassfield's residence in Franklin County, Tennessee, while Brassfield was working a twenty-four hour shift as a firefighter. Upon his return home, Brassfield noticed that the firearms from his gun cabinet located in the living room were missing and the cabinet door was still intact. Brassfield reported the theft to the police. Some of the firearms were recovered on May 6, 2009, at a residence used by Defendant and his brother and codefendant, Juan Sanchez. Those firearms included a Mossberg 20-gauge shotgun; a JC Higgins, Model 583, 12-gauge bolt-action shotgun; and a Remington, model 7400, .30-06 caliber rifle.

-1-

A Remington, Model 552, .22 caliber rifle, which had also been stolen from Brassfield's home, was recovered after a shooting in Nashville on May 5, 2009. The victim, Angel Sandoval, had been fighting with Defendant and Juan Sanchez. Amy Cheeves and her brother Jesse Wray, with whom the Sanchezes had been staying in a residence near the shooting, turned the rifle over to the police.

Defendant and his brother Juan were eventually charged on March 31, 2010, in a multi-count superseding indictment. Defendant was charged in the indictment with: assault with a dangerous weapon in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(3) (Count One); attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5) (Count Two); possession and discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count Four); possession of firearms by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924 and 2 (Count Five); and possession of stolen firearms, in violation of 18 U.S.C. §§ 922(j), 924(a)(2) and 2 (Count Six). On January 5, 2012, Defendant pleaded guilty to Counts Five and Six, without a plea agreement.

A presentence report ("PSR") was prepared. It set Defendant's base offense level at 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A)[1], added two points because the offense involved three or more firearms, U.S.S.G. § 2K2.1(b)(1)(A), added another two points because the rifles were stolen, U.S.S.G. § 2K2.1(b)(4)(A), and added four more points because Defendant used a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B). The PSR stated: "Specifically, Eric Sanchez used a .22 caliber Remington, model 552, rifle in an Attempted Murder of Angel

[1]U.S.S.G. § 2K2.1 is the guideline applicable to violations of 18 U.S.C. §§ 922(g) and 922(j).

Sandoval on May 5, 2009." The PSR cross referenced U.S.S.G. § 2K2.1(c)(1)(A), which provides that if the firearm is used or possessed in connection with the commission of another offense, the resulting offense level of the other offense shall be applied if it is greater than the otherwise applicable base offense level. The applicable guideline for attempted murder prescribes a base offense level of 33 "if the object of the offense would have constituted first degree murder." U.S.S.G. § 2A2.1(a)(1). Accordingly, Defendant received a base offense level of 33. Defendant's offense level was further adjusted by three levels because the injury to Sandoval was greater than serious bodily injury but less than permanent or life-threatening injury. U.S.S.G. § 2A2.1(b)(1)(C). After credit for acceptance of responsibility, Defendant's total offense level was 33. The PSR determined Defendant's criminal history warranted a category IV.

Defendant raised several objections, including a challenge to the cross reference to U.S.S.G. § 2K2.1(c)(1). A sentencing hearing was held, at which several witnesses testified. Brassfield testified that he rented an apartment behind his house to codefendant Beatriz Avila and that she had access to his residence. Brassfield recalled meeting Defendant and his brother. Brassfield stated that the Remington Model, .22 caliber rifle was one of the firearms that had been stolen from his gun cabinet, and he unequivocally identified the rifle as "mine."

Sandoval testified that he had been taking his car to a repair shop in the area of California Avenue when he noticed a man bullying a friend of his. Sandoval knew that two men had been bullying his friend. He did not know the Sanchez brothers. According to Sandoval, he confronted the man bullying his friend, who turned out to be Juan, and the two began fighting. Another man, Defendant, came out of the house with a rifle and warned Sandoval to leave Juan alone. The fighting stopped for a second, and Sandoval began backing away, but Juan continued coming at him, and the

-3-

two men resumed fighting. Soon Sandoval heard someone shooting at him, and he started running in a zig-zag fashion. Sandoval was shot in the back near the shoulder. The bullet hit a main artery in his shoulder, and damaged a nerve ending in his hand. Sandoval was unarmed.

David Brake, the tow truck driver, stated that he saw Sandoval and another man (Juan) fighting, and that another individual, Defendant, joined in. According to Brake, the fighting broke off for a second, and Defendant went into the house, and that after he did, the fighting resumed. The man in the house reemerged with a rifle, chased Sandoval down the alley, and shot at him.

Jesse Wray, who along with his sister Amy, lived at the corner of California Avenue and 62nd street in Nashville, saw the fight. Wray stated that a man (Sandoval) approached Juan and started hitting him, and "then Kid came out the house and shot him."[2] Wray led police to the .22 rifle Kid used to shoot Sandoval, which was located in the house.

Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent Shawn Morrow identified the .22 caliber rifle, which was introduced into evidence, as the same rifle recovered from Wray's residence. Morrow also identified a TBI Forensic report reflecting that the four cartridge casings recovered from the shooting scene matched the .22 caliber rifle. Morrow testified that one of Defendant's nicknames was "Kid."

Also at sentencing, Defendant conceded that his nickname was Kid and that he had shot Sandoval.

The district court found that Defendant had used a firearm in connection with another felony offense, namely Assault with Intent to Commit Murder; Attempted Murder, U.S.S.G. § 2A2.1:

---

[2]Although Wray acknowledged being familiar with Kid, he did not identify Eric Sanchez as Kid at the sentencing hearing.

In the Court's view, this is not a classic case of attempted first degree murder. However, the operative facts are that Mr. Sanchez retrieved – went in the house, retrieved a rifle, came back out, started shooting. And as Mr. Sandoval fled, continued shooting and shot him. . . . This is not simply . . . a shooting upon a sudden quarrel like was quoted earlier about manslaughter. Certainly the initial part of the encounter wasn't started by Mr. Sanchez. Started by Mr. Sandoval. *But the act of premeditation was after Mr. Sandoval fled, Mr. Sanchez in a premeditated way with malice aforethought shot Mr. Sandoval as he was fleeing. There was no need to shoot him as he fled. Particularly, shot him in the back. So I think assault with intent to commit murder is an appropriate cross-reference.*

Having said that, because this is not the classic example of attempted murder, I think the fact that Mr. Sandoval started the fight and that it escalated is a mitigating circumstance that should be taken into account in overall sentencing, but the cross-reference is appropriate. The cross-reference also requires that there be some connection between counts in conviction and stolen firearms and the firearm used in connection with another felony offense. *The connection is that Juan Sanchez stole the firearms from Mr. Brassfield on May 1st, and four days later one of those four firearms is used to shoot Mr. Sandoval with the felony offense of attempted first degree murder. So that's the connection, the close connection between all of that activity.*

(Emphases added.) The district court overruled Defendant's objection, applied the cross reference provision, U.S.S.G. 2K2.1(c)(1), and the corresponding guideline provision, U.S.S.G. § 2A2.1, resulting in a total offense level of 33, and reduced Defendant's criminal history category to III, giving an advisory guideline range of 168 to 210 months. The court then granted a downward departure of twelve months under U.S.S.G. § 5K2.23 based on the amount of time Defendant had already served in state custody. The court subtracted the twelve months from the bottom of the range, resulting in a sentence of 156 months. Because Count Five carried a ten-year statutory maximum, the court made the 36 months on Count Six consecutive to Count Five. This also resulted in a sentence of 156 months' imprisonment.

On appeal, Defendant argues that his sentence is procedurally unreasonable because (1) nothing in the record supports the judicial determination that Juan Sanchez stole the firearms in

question from Brassfield, and (2) the facts as presented do not inevitably lead to a finding that he had specific intent to kill Angel Sandoval. Defendant also contends that his sentence was unconstitutional because it was based on a fact not admitted by him or found by a jury, namely that his conduct involved premeditation.

## II.

The Supreme Court has characterized procedural unreasonableness as "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). This court reviews a sentence imposed by the district court for reasonableness, *United States v. Booker*, 543 U.S. 220, 261-62 (2005), using an abuse-of-discretion standard. *Gall*, 552 U.S. at 51. We review the district court's factual findings for sentencing purposes for clear error, *United States v. Davidson*, 409 F.3d 304, 310 (6th Cir. 2005), and a district court's legal interpretation of the sentencing guidelines de novo. *United States v. Kosinski*, 480 F.3d 769, 774 (6th Cir. 2007). We defer to the district court's application of the sentencing guidelines to the facts. *Id.*

## A.

First, Defendant argues that the district court erred in applying the cross reference provision of U.S.S.G. § 2K2.1(c)(1)(A)[3], because the Government failed to prove that the firearm used to shoot Sandoval was connected to the firearms he pleaded guilty to possessing as required by the guideline.

---

[3]Defendant's challenge to the court's application of U.S.S.G. § 2K2.1(b)(6), whose language is essentially identical to U.S.S.G. § 2K2.1(c)(1), is subsumed in the discussion of subsection (c)(1). *See United States v. Howse*, 478 F.3d 729, 733 (6th Cir. 2007).

Section 2K2.1(c)(1)(A) states that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense," the district court must apply the offense guideline for the other offense if it is greater that the offense level from the guideline determined under § 2K2.1.[4] Section 2K.2.1(c)(1)(A) references U.S.S.G. § 2X1.1, the guideline for "Attempt, Solicitation, or Conspiracy." U.S.S.G. § 2K2.1(c)(1)(A). Section 2X1.1 in turn directs a district court to apply the base offense level for the substantive offense. The relevant guideline for the substantive offense of attempted murder is U.S.S.G. § 2A2.1. As noted, this guideline produced the higher offense level in this case.

In determining relevant conduct for a § 922(g) offense, the district court may consult U.S.S.G. § 2K2.1(c)(1), and the defendant's base offense level includes both the offense conduct and all relevant conduct pursuant to U.S.S.G. § 1B1.3(a). *United States v. Howse*, 478 F.3d 729, 732 (6th Cir. 2007); *United States v. Settle*, 414 F.3d 629, 632 & n.2 (6th Cir. 2005) (*Settle II*). Relevant conduct includes not only "'all acts and omissions committed . . . that occurred during the commission of the offense of conviction,'" *Howse*, 478 F.3d at 732 (quoting U.S.S.G. § 1B1.3(a)(1)), but also "'all harm that resulted from the acts and omissions' of the relevant conduct as well as 'all harm that was the object of such acts and omissions.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(3)).

Circuit precedent is clear: the use of a firearm is relevant conduct that can trigger § 2K2.1(c)(1)'s cross reference to § 2X1.1's enhancement provision even if the weapon used in the

---

[4]Application note 14(A) to U.S.S.G. § 2K2.1 explains the "in connection with" component, stating that (c)(1) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1 cmt. n.14(A). "Another felony offense" for purposes of subsection (c)(1) "means any federal, state, or local offense . . . regardless of whether a criminal charge was brought, or a conviction obtained." cmt. n.14(C).

related conduct is different from the weapon that formed the basis for the § 922(g) offense, if there is a "clear connection" between the offense firearm and the enhancement firearm. *Howse*, 478 F.3d at 731-34 (involving U.S.S.G. § 2K2.1(b)(5), which contains identical language to section 2K2.1(c)(1) and is located in the same portion of the guidelines); *Settle II*, 414 F.3d at 32-34; *United States v. Settle*, 394 F.3d 422, 435-36 (6th Cir. 2005) ("*Settle I*"), *vacated on other grounds*, 545 U.S. 1102 (2005), *reinstated as amended by* 414 F.3d 629 (6th Cir. 2005).

The factual record in this case, as developed at the sentencing hearing, reveals that: (1) six firearms were stolen from Brassfield's home, including a .22 caliber rifle; (2) four days later Defendant shot Sandoval with a .22 caliber rifle; (3) Defendant pleaded guilty to possessing three other firearms stolen from Brassfield's home; (4) Brassfield identified the .22 caliber rifle used in the shooting of Sandoval; (5) ballistic evidence showed that a total of four shots were fired from the .22 caliber rifle; and (6) Defendant conceded that he shot Sandoval. Based on these facts, the district court did not abuse its discretion in concluding that the Government established by a preponderance of the evidence that the .22 caliber rifle was connected to the counts of conviction and that Defendant used the .22 caliber rifle in connection with another felony offense, the attempted murder of Sandoval.

Defendant argues that there was no proof to connect Juan or Defendant to the theft of Brassfield's weapons, and that codefendant Avila had a connection and a motive to steal the guns (she needed money to travel to California on the day of the theft). This argument totally misses the mark: Defendant pleaded guilty not only to being a felon in possession, but also to possessing three stolen firearms, which happened to belong to Brassfield. That admission provides a pretty clear

connection to the offense firearms and the rifle that was used to shoot Sandoval. This argument is without merit.

**B.**

Defendant also argues that the factual findings do not support the application of the attempted murder guideline, U.S.S.G. § 2A2.1, because there was no proof of malice and premeditation. Although as Defendant readily points out, the district court stated that this was "not a classic case of attempted first degree murder," the district court specifically found that "the act of premeditation," "with malice aforethought," occurred when Defendant shot a fleeing Sandoval, because "there was no need to shoot him as he fled." The factual record, particularly Sandoval's and Brake's testimony, supports the district court's factual finding. *Cf. United States v. Amos*, 423 F. App'x 541, 550 (6th Cir. 2011) (holding that the defendant had intent and malice aforethought to commit attempted murder of a federal agent where the defendant followed the ATF agent out of the house, told the agent several times to stop running, took aim, and shot twice); *United States v. Smith*, 308 F. App'x 942, 948 (6th Cir. 2009) (holding that the district court properly imposed a four-level enhancement under U.S.S.G. § 2A.2.1(a)(1) after finding that the defendant had acted "with intent to commit murder" or that his conduct was "deliberate and premeditated" where one victim was shot in the back while trying to run away).

**C.**

Lastly, Defendant asserts that his sentence is unconstitutional under *Booker* because it is based on a fact not found by the jury–namely the existence of premeditation. However, as this court has observed:

*Booker* did not eliminate judicial fact-finding. Instead, the remedial majority gave district courts the option, after calculating the Guideline range, to sentence a defendant outside the resulting Guideline range. *Booker*, 125 S.Ct. at 764, 769; *U.S. v. Williams*, 411 F.3d 675, 678 (6th Cir.2005). District courts, in cases such as these, must, therefore, calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range.

*United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005); *United States v. Edwards*, 256 F. App'x 791, 792 (6th Cir. 2007) (per curiam) (same). The sentence imposed does not exceed the maximum authorized by the facts established by Defendant's plea. Here, the district court started at the bottom of the advisory guidelines range (168-210 months), and granted a downward departure of 12 months. The statutorily authorized maximum sentence for each of Counts Five and Six is 120 months. The court imposed the statutorily authorized maximum sentence for Count Five, 120 months, and 36 months on Count Six, consecutive to Count Five, resulting in a final sentence of 156 months. The court's calculations are in accord with U.S.S.G. § 5G1.2(d).

### III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**