RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0154P (6th Cir.)
File Name: 01a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　*v.*　　　　　　　　　　　　　No. 99-6437

NATONYA TAMU COBB,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20177—Julia S. Gibbons, District Judge.

Argued: January 25, 2001

Decided and Filed: May 8, 2001

Before: MARTIN, Chief Judge; SUHRHEINRICH, Circuit Judge; OLIVER, District Judge.*

---

**COUNSEL**

**ARGUED:** Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES

---

* The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

1

ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:** Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

––––––––––––––––

## OPINION

––––––––––––––––

OLIVER, District Judge.  Defendant-Appellant Natonya Cobb ("Cobb") appeals her sentence for disposing of a firearm to a convicted felon in violation of 18 U.S.C. § 922(d).  Cobb claims that the district court erred in enhancing her sentence under U.S.S.G. § 2K2.1(c)(1)(B) for disposing of the firearm with knowledge or intent that it would be used to commit murder.  For the reasons set forth below, we AFFIRM the district court.

### I.  BACKGROUND

Cobb's boyfriend, co-defendant Kennath Henderson ("Henderson"), was confined at the Fayette County, Tennessee, jail in the Spring of 1997.  In March of 1997, Henderson began calling Cobb to ask her to get a gun for him.  Eventually, Cobb agreed that she would procure a gun for Henderson from her friend, co-defendant Johnny Goolsby ("Goolsby").  Cobb decided to get the gun for Henderson because Henderson claimed he had located the man who had raped Cobb's mother.  Cobb believed that Henderson was going to give the pistol to his brother who would in turn give it to someone who would shoot the rapist.  On April 25, 1997, Cobb bought a .380 caliber pistol from Goolsby.

The next day, April 26, 1997, Cobb concealed the loaded .380 pistol inside her clothes and smuggled it in to Henderson while visiting him at the Fayette County Jail.  On May 2, 1997, Henderson used the pistol to shoot and kill Deputy William T. Bishop when Deputy Bishop attempted to prevent Henderson from escaping from custody.  Henderson was

committed."). Although the *Cutler* and *Cummings* courts were discussing § 2K2.1(b)(5), the commentary to § 2K2.1 makes it clear that the word "another" is used in the same manner in sections § 2K2.1(b)(5) and § 2K2.1(c)(1)(B). *See* U.S.S.G. § 2K2.1, cmt. n.18.

At the time that Cobb transferred the .380 pistol to Henderson, she had knowledge or intent that it would be used or possessed in connection with "another offense" within the meaning of § 2K2.1(c)(1)(B), the shooting of the individual who raped her mother. Death resulted from the use of the pistol. Thus, Cobb's conduct precisely fits the language of § 2K2.1(c)(1)(B).[1] Under the language of § 2K2.1(c)(1), it is irrelevant that the pistol was not used as Cobb intended, but instead was used by Henderson to shoot the jail deputy. The district court was thus correct to enhance Cobb's sentence under § 2K2.1(c)(1)(B) rather than under § 2K2.1(b)(5).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[1] Of course, had death not resulted, § 2K2.1(b)(5) would have applied to Cobb's conduct.

captured a short time after the shooting and escape; the .380 pistol was still in his possession. The pistol was traced to Cobb, who confessed her involvement. When she was shown a photograph of the gun, she admitted that it was the one she gave to Henderson.

On August 28, 1997, the Federal Grand Jury for the Western District of Tennessee returned a twenty-four count indictment against Cobb and eight codefendants. Cobb was named in Counts 1, 8 and 9 of the indictment. Count 1 charged her with conspiracy in violation of 18 U.S.C. § 371; Count 8 charged her with disposing of ammunition to a convicted felon in violation of 18 U.S.C. § 922(d); and Count 9 charged her with disposing of a firearm to a convicted felon, also in violation of § 922(d).

On August 27, 1999, Cobb pled guilty to Count 9 of the indictment pursuant to a plea agreement. After a sentencing hearing on September 24, 1999, the district court sentenced Cobb to a 120-month prison term. This appeal followed.

## II. STANDARD OF REVIEW

We review a district court's factual findings in connection with sentencing under a deferential "clearly erroneous" standard. *United States v. Latouf*, 132 F.3d 320, 321 (6th Cir. 1997). However, this court reviews *de novo* the district court's interpretation and application of the sentencing guidelines. *United States v. Sivils*, 960 F.2d 587, 596 (6th Cir. 1992).

## III. DISCUSSION

Cobb's claim of sentencing error focuses on the district court's application of U.S.S.G. § 2K2.1(c)(1), a cross reference section. This section provides in pertinent part:

(1) If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge

or intent that it would be used or possessed in connection with another offense, apply -

(B) if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

Adopting the findings of Cobb's presentence investigation report, which concluded that Cobb gave the gun to Henderson so that it could eventually be used to shoot her mother's rapist, the district court cross-referenced to U.S.S.G. § 2A1.1, the first degree murder Guideline, which carries a base offense level of 43. After a three-point reduction for acceptance of responsibility, Cobb's offense level was 40. With a criminal history category of I, her guideline sentence range was 292-365 months. However, pursuant to U.S.S.G. § 5G1.1(a), Cobb was sentenced to a restricted range of 120 months, the statutory maximum for 18 U.S.C. § 922(d).

Cobb now asserts that the district court should have sentenced her pursuant to § 2K2.1(B)(5), which provides:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

Cobb argues that § 2K2.1(c)(1)(B) does not apply to her because she did not have "knowledge or intent" that Deputy Bishop would be killed because she thought the gun she gave Henderson was going to be used to shoot her mother's rapist. According to Cobb, where a defendant knows or intends that a firearm is going to be used in connection with a specific offense other than the one in connection with which it is actually used, the cross reference cannot be applied because the defendant's intent cannot be transferred from one offense to another. She asserts that in such a situation, § 2K2.1(b)(5)

should be applied because the defendant only has "reason to believe" that the firearm will be used in connection with another felony offense.

Cobb's reading of § 2K2.1(c)(1)(B) is inconsistent with the plain language of the statute. Sentencing guidelines should be read as they are written. *United States v. Nunez*, 146 F.3d 36, 40 (1st Cir. 1998). As written, § 2K2.1(c)(1)(B) focuses on a defendant's state of mind with respect to some other offense generally rather than on his or her state of mind with respect to some specific offense. *See* U.S.S.G. § 2K2.1, cmt. n.18 ("As used in subsections (b)(5) and (c)(1), 'another felony offense' and 'another offense' refer to offenses other than explosives or firearms possession or trafficking offenses."). If the defendant has the requisite state of mind with respect to that general offense *and death results*, then § 2K2.1(c)(1)(B) is applicable. Cobb's interpretation of § 2K2.1(c)(1)(B), which would bar application of the section if the offense that causes the death is not the specific offense that the defendant had knowledge of or intended, requires too narrow a reading of the section. For example, the Fourth Circuit had the following to say about the meaning of "another felony offense" as used in § 2K2.1(b)(5):

While appellant argues that the section requires knowledge of some specific offense, the use of the word "another" as the sole modifier of "felony offense" does not command such a narrow reading. As used in this context, "another" merely means "additional, one more." While appellant would like the section to read "another *specific* felony offense," it does not.

*United States v. Cutler*, 36 F.3d 406, 408 (4th Cir. 1994) (citations omitted) (emphasis in original). *See also United States v. Cummings*, No. 93-2037, 1994 WL 91825 at * 2 (6th Cir. Mar. 22, 1994) ("We . . . hold that a section 2K2.1(b)(5) enhancement is appropriate when the defendant had reason to believe the transferred firearm would be used in connection with any felony, without regard to whether the defendant had reason to know which particular felony might be