**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0027n.06

**No. 13-5489**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 15, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| ANTHONY HARRIS, | ) | O P I N I O N |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:    COLE, GILMAN, and DONALD, Circuit Judges.

COLE, Circuit Judge.  Anthony Harris appeals the imposition of a prison sentence stemming from his conviction for possessing a firearm as a convicted felon.  After calculating a Guidelines sentencing range of 235 to 293 months, the district court sentenced Harris to the statutory-maximum term of 120 months' imprisonment.  On appeal, Harris contends that the court committed reversible error by (1) applying a four-level enhancement for possessing a firearm in connection with another felony offense or transferring the firearm with reason to believe that it would be used in connection with another felony offense; (2) applying a sentencing cross-reference to second-degree murder; and (3) refusing to grant a downward variance based on his substantial assistance to law enforcement.  Because the district court failed to make adequate findings of fact to support the cross-reference to second-degree murder, we vacate and remand for resentencing.

## I.  BACKGROUND

### A.  Factual Background

Anthony Harris was charged with and pleaded guilty to one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Harris's federal prosecution was based upon his sworn testimony, during his previous state-court trial for the murder of William Wheeler, that he possessed a nine millimeter semi-automatic handgun owned by his girlfriend.  Harris was a felon at the time of the incident and was not permitted to possess a firearm.

The sordid events surrounding Wheeler's murder are crucial to understanding the sentence imposed in this federal case and to Harris's arguments on appeal.  As Harris explained it, he planned to spend the Fourth of July like many Americans, by hosting a celebratory cookout.  But before the sun had set or any fireworks had exploded, Harris's day veered horribly off course.  According to his testimony, Harris introduced Wheeler—whom Harris had just met that morning—to a known drug dealer, Michael Olebe; traded his girlfriend's handgun to Olebe as collateral for $40 worth of cocaine; spent much of the day snorting cocaine and drinking vodka while driving Wheeler and Olebe around town in search of crack cocaine; was chased away from a known crack house; drove Wheeler, Olebe, and a third passenger away from the crack house while Olebe and the passenger repeatedly stabbed and shot Wheeler to death with the handgun; drove the car around looking for a place for Olebe to dump Wheeler's body; and, ultimately, was present when Olebe dumped Wheeler's body on the side of the road and later set fire to Wheeler's vehicle.

## B. Procedural Background

Harris was charged in the Knox County Criminal Court with one count of first-degree murder and two counts of felony murder, all arising from Wheeler's homicide. At the close of his murder trial, a jury found Harris guilty of the lesser offenses of facilitating attempted second-degree murder and two counts of facilitating felony murder during the perpetration of kidnapping and theft, respectively. He was sentenced to 22 years of imprisonment. Harris was then indicted on the federal gun charge. He ultimately pleaded guilty, without the benefit of a plea agreement, to one count of being a felon in possession of a firearm.

## C. Federal Sentencing

In calculating the applicable Guidelines range, the probation officer recommended that Harris's base offense level be set at 14 because he was a prohibited person at the time he possessed the firearm. *See* U.S.S.G. § 2K2.1(a)(6).) The probation officer then calculated a two-level enhancement under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen and a four-level enhancement under § 2K2.1(b)(6)(B) because Harris possessed the firearm in connection with another felony offense or transferred the firearm with reason to believe that it would be used in connection with another felony offense. Further, because Harris possessed the firearm in connection with the commission of another offense and death resulted, the probation officer calculated the base offense level for the most analogous homicide offense from § 2A1 and applied a cross-reference to that provision. *See* U.S.S.G. § 2K2.1(c)(1)(B) (describing the mandatory cross-reference provision for certain firearm offenses that result in death).

The probation officer recommended that the most analogous guideline to cross-reference was § 2A1.2(a), regarding second-degree murder, and thus proposed setting Harris's base offense level at 38. After a three-level reduction for acceptance of responsibility, Harris's total offense level was 35. Harris had seven criminal history points for a criminal history category of IV. The resulting Guidelines range was 235 to 293 months of imprisonment, restricted by the ten-year statutory maximum under 18 U.S.C. § 924(a)(2), for an effective Guidelines range of 120 months' imprisonment.

Harris filed objections to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and the second-degree murder cross-reference under § 2A1.2(a). The probation officer responded with an addendum to the Presentence Report ("PSR"), explaining the rationale for recommending the enhancement and cross-reference:

> In this case the Defendant possessed the firearm, took the murder victim and met with Mr. Olebe, traded the firearm to Olebe for drugs, was present in the car when the murder victim was shot by Olebe, was present when the body was disposed of, and was present when the car was set on fire. The Defendant then got the firearm back from Olebe. Defendant Harris was convicted by jury trial of Facilitation of [Attempted] Second Degree Murder and two counts of Facilitation of Felony Murder. Although no Sixth Circuit cases with this exact situation were located, similar cases were found in other circuits. The Seventh Circuit vacated the defendant's sentence in U.S. v. Thomas, 280 F.3d 1149, because the Circuit Court did not "make any findings that Thomas's conduct put in motion a series of events that led to Leal's death. All the Court found was that Thomas was 'involved' in Leal's murder and 'the theft of Mr. Leal's gun.' We are unable to determine if the theft and possession resulted in Leal's death or if Leal's death precipitated the theft and possession . . . Because there are insufficient findings as to the sequence of events and whether Thomas possessed any firearm before or at the time of Leal's death, the district court's application of the cross reference was in error." As shown above, in the instant case, defendant Harris "put into motion a series of events" that [led] to the death of the victim. In U.S. v. Cherry, 572 F.3d 829, the Tenth Circuit stated "Although we are aware of no federal case in point, it appears that criminal

liability for homicide does not turn on proof that the Defendant was the actual instrument of death." The Probation Office believes that the guidelines have been calculated correctly, and the Presentence Report will not be changed.

The government then filed a sentencing memorandum that, based on the PSR, also recommended the statutory maximum of 120 months' imprisonment. Harris responded by renewing his objections to the PSR, including the four-level enhancement and the cross-reference to second-degree murder. Harris contended that his properly calculated offense level was 14, for a total sentencing range of 27 to 33 months. Harris also requested a variance from the Sentencing Guidelines for the assistance he allegedly provided to law enforcement throughout his state court case.

At Harris's sentencing hearing, the parties reiterated their stated reasoning, objections, and proffered sentences. The government briefly argued that the most analogous cross-reference for the state crime of facilitating felony murder was actually the federal crime of aiding and abetting *first*-degree murder, which would have yielded an even higher total offense level. But the government acknowledged that the 120-month statutory maximum would control regardless of whether the court applied a cross-reference to first- or second-degree murder. The government also noted that the "relevant conduct" the court must consider in selecting the analogous cross-reference was not limited to the conduct for which Harris was convicted in state court. Rather, the government argued that the basis and the burden of proof are "much lower at this point than a beyond a reasonable doubt conviction . . . to apply the cross-reference in this case."

Harris, on the other hand, argued that the cross-reference to second-degree murder should not apply as he was being wrongfully exposed to a penalty for a crime for which he was found not guilty in state court. Harris argued that, absent proof of intent to murder Wheeler, the cross-reference to U.S.S.G. § 2A1.2(a) was inapplicable, particularly because he was convicted in state court only of facilitation. Harris argued that he was "stupid" in providing the handgun to Olebe, but that Olebe remained the real cause of Wheeler's death.

The district court considered the parties' arguments before concluding that the firearm enhancement and cross-reference to second-degree murder were appropriate:

> [A]s correctly noted . . . Defendant took his girlfriend's firearm, took the murder victim and met with Olebe, traded the loaded firearm to Olebe for drugs, was present in the car when the murder victim was shot by Olebe, was present when the body was disposed of, and was present when the car was set on fire.
> Defendant then got the firearm back from Olebe. Defendant did not report these crimes to the police. Defendant was found guilty by a jury of facilitation of attempted second-degree murder and two counts of facilitation of felony murder for the murder of the victim. Defendant participated in the jointly undertaken criminal activity of setting up and engaging in more drug deals.
> Accordingly, the Court finds that Defendant put into motion and actively participated in a series of events that led to the death of the victim and that the enhancements [in the PSR] are applicable in the calculation of Defendant's guideline range for the instant offense. Therefore, Defendant's objection is overruled.

After discussing the relevant sentencing factors under 18 U.S.C. § 3553(a), the court adopted the Guidelines calculations from the PSR and sentenced Harris to 120 months of imprisonment. When asked, pursuant to *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), if there were any objections, Harris's attorney stated "yes, your Honor, I would like to lodge an objection to the sentence please." The court construed this as an objection to the procedural and substantive reasonableness of the sentence.

## II.  DISCUSSION

We review criminal sentences for reasonableness under an abuse of discretion standard.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  To obtain relief, an appellant must show that the sentence is either procedurally or substantively unreasonable.  *Id.*  A sentence is procedurally unreasonable if the district court committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."  *Id.*

In reviewing the propriety of a Guidelines enhancement, "[t]he district court's interpretation of the advisory Guidelines is reviewed *de novo*, and its findings of fact are reviewed for clear error."  *United States v. Brown*, 579 F.3d 672, 677 (6th Cir. 2009).  "Whether the facts found [by the district court] warrant the application of a particular guideline provision is a legal question reviewed de novo."  *United States v. Coleman*, 627 F.3d 205, 211 (6th Cir. 2010).  The Supreme Court has emphasized that a reviewing court is obliged "not only to 'accept' a district court's 'findings of fact' (unless 'clearly erroneous'), but also to 'give *due deference* to the district court's application of the guidelines to the facts,'" at least as to fact-bound legal determinations.  *Buford v. United States*, 532 U.S. 59, 63 (2001) (citing 18 U.S.C. § 3742(e)).  In the context of an enhancement under U.S.S.G. § 2K2.1(b)(6), for example, the determination that a firearm was used or possessed "in connection with" another felony is a fact-specific inquiry, so we afford "due deference" to the district court.  *United States v. Taylor*, 648 F.3d 417, 431–32 (6th Cir. 2011).

If the district court's sentencing decision is procedurally sound, we must then consider the substantive reasonableness of the sentence imposed under an abuse of discretion standard. *Gall*, 552 U.S. at 51; *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). "The sentence may be substantively unreasonable if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors, or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011). We afford a rebuttable presumption of reasonableness to a sentence within the properly calculated Guidelines range in recognition that both the sentencing judge and the Sentencing Commission have reached the same conclusion as to the proper sentence. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Harris alleges that his sentence is procedurally unreasonable because the district court erred in calculating his Guidelines range by applying a four-level enhancement for possessing a firearm in connection with another felony offense and by applying a sentencing cross-reference to second-degree murder. Harris also argues that his sentence is substantively unreasonable because the court declined to grant a downward variance based on his alleged assistance to law enforcement authorities investigating Wheeler's murder. We address each argument in turn.

**A. Firearm Enhancement Under U.S.S.G. § 2K2.1(b)(6)(B)**

In his first assignment of error, Harris argues that his sentence is procedurally unreasonable because the district court erred by applying a four-level enhancement for possessing or transferring a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). Affording "due deference" to the district court's determination, *Taylor*, 648 F.3d at 432, we cannot say the court erred by applying the enhancement.

The § 2K2.1(b)(6)(B) enhancement applies to defendants who "[u]sed or possessed any firearm or ammunition in connection with another felony offense" or who "possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The application notes state that the enhancement should apply "if the firearm . . . facilitated, or had the potential of facilitating, another felony offense." *Id.* cmt. n.14(A). The government bears the burden of establishing facts to support this enhancement by a preponderance of the evidence. *United States v. Shields*, 664 F.3d 1040, 1043 (6th Cir. 2011).

For purposes of the enhancement, "[a]nother felony offense" means "any Federal, state, or local offense, other than the explosive or firearms possession [offense] . . . punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n.14(C). The independent felony offenses in this case were the distribution of a controlled substance and the death of Wheeler. The district court determined that Harris participated in the "jointly undertaken criminal activity of setting up and engaging in more drug deals" and "put into motion and actively participated in a series of events that led to the death of the victim." Accordingly, the court applied the enhancement over Harris's objection.

Harris argues that application of the enhancement was erroneous because "there was not a sufficient nexus" between the gun he traded to Olebe and Wheeler's death. What he overlooks is that the court was not required to find a sufficient nexus between the gun and Wheeler's death to apply the firearm enhancement. The enhancement was warranted by virtue of the drug transaction

alone. *See id.* cmt. n.14(B) ("[I]n the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, . . . . application of [the enhancement] is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ."); *United States v. Huffman*, 461 F.3d 777, 778 (6th Cir. 2006) ("[The enhancement][1] applies where a defendant has used a firearm to protect the drugs, *facilitate a drug transaction*, or embolden himself while participating in felonious conduct." (emphasis added)).

Harris's testimony in state court shows that he used the firearm to facilitate a drug transaction; but for the firearm, Olebe would not have sold the cocaine. Harris's role in arranging and participating in the drug transaction constituted a felony offense under both federal and Tennessee law. *See* 21 U.S.C. § 841(a), (c) (prohibiting the knowing or intentional distribution of a controlled substance); 18 U.S.C. § 2 (establishing criminal liability as a "principal" for aiding or abetting the commission of a crime); *see also* Tenn. Code § 39-17-417(a)(2), (3) (prohibiting the knowing delivery or sale of a controlled substance); *id.* § 39-11-402(2) (establishing criminal liability for intentionally promoting or assisting the commission of the offense). The government proved these offenses by a preponderance of the evidence because Harris freely testified that he arranged the meeting between Wheeler and Olebe, and that he traded the firearm for cocaine. *See United States v. Winston*, 687 F.2d 832, 833–35 (6th Cir. 1982). We cannot say that the district court's factual findings on this point constituted "clear error." Therefore, application of the firearm enhancement was warranted.

---

[1]Section 2K2.1(b)(5), cited in *Huffman*, was renumbered as § 2K2.1(b)(6) in 2006.

Furthermore, Harris's decision to transfer the stolen handgun to a known drug dealer gave him reason to believe that the firearm would be used in connection with another offense, providing another basis for applying the enhancement. *See* U.S.S.G. § 2K2.1(b)(6)(B); *United States v. Freeman*, 640 F.3d 180, 189 (6th Cir. 2011) ("We have no problem concluding that [the defendant's] sale of firearms to his heroin dealer . . . gave him reason to know or have reason to believe that his heroin dealer 'intended to use or dispose of the firearm unlawfully.'"); *United States v. Cummings*, 19 F.3d 1434, at *1–2 (6th Cir. 1994) (per curiam) (unpublished table decision). Accordingly, we affirm the district court's application of the four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

## B. Cross-Reference to Second-Degree Murder

In his second assignment of error, Harris argues that his sentence is procedurally unreasonable because the district court erred by applying a cross-reference to second-degree murder. Because the court failed to determine whether Harris possessed the requisite mental state to satisfy the definition of second-degree murder, we vacate Harris's sentence and remand for resentencing.

Section 2K2.1(c)(1)(B) of the Sentencing Guidelines states that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense . . . [and] death resulted," the court must cross-reference the "most analogous [homicide] offense guideline." Therefore, this appeal requires us to determine whether the cross-reference gateway provision was implicated, and if so, whether the district court erred in selecting second-degree murder as the most analogous offense. Harris seems to contest both points.

*1. Implication of the Cross-Reference Provision Under U.S.S.G. § 2K2.1(c)(1)(B)*

We afford "due deference" to the district court's determination that a cross-reference to the

Homicide Guidelines was necessary under the gateway provision of U.S.S.G. § 2K2.1(c)(1)(B).[2]

Applying that deference, we cannot say that the court erred in its determination that a cross-

reference to *some* homicide offense was presumptively warranted.[3]

As previously discussed, the district court found that Harris engaged in criminal activity "in

connection with" the possession and transfer of a firearm and "put into motion and actively

participated in a series of events that led to the death of the victim." We concluded that these

findings were not in error. Therefore, the court's determination that the homicide cross-reference

provision under § 2K2.1(c)(1)(B) was implicated was not in error either.

Contrary to Harris's argument, the cross-reference gateway from § 2K2.1(c)(1)(B) does not

require that a defendant specifically intended death to occur. *See United States v. Cobb*, 250 F.3d

346, 349 (6th Cir. 2001) ("As written, § 2K2.1(c)(1)(B) focuses on a defendant's state of mind with

respect to some other offense generally . . . . If the defendant has the requisite state of mind with

respect to that general offense *and death results*, then § 2K2.1(c)(1)(B) is applicable."); *see also*

*United States v. Thomas*, 280 F.3d 1149, 1155 (7th Cir. 2002) (explaining that § 2K2.1(c)(1)(B) is

---

[2]Because the operative language from U.S.S.G. §§ 2K2.1(b)(6) and 2K2.1(c)(1) is "essentially identical," *United States v. Sanchez*, 527 F. App'x 488, 492 n.3 (6th Cir. 2013); *accord United States v. Howse*, 478 F.3d 729, 733 (6th Cir. 2007), we apply the same standard of review to fact-bound legal determinations under either Guideline, s*ee Taylor*, 648 F.3d at 431–32.

[3]A homicide cross-reference applies only "if the resulting offense level is greater than that determined" under U.S.S.G. § 2K2.1. U.S.S.G. § 2K2.1(c)(1)(B).

generally implicated when the defendant's triggering conduct "put into motion a chain of events that ended in a tragedy" (quoting *United States v. Walls*, 80 F.3d 238, 241 (7th Cir. 1996))).

Thus, it is irrelevant whether Harris intended Wheeler's death when he traded the firearm to Olebe in exchange for cocaine. What matters is that Harris possessed the firearm in connection with the commission of another offense and death resulted. U.S.S.G. § 2K2.1(c)(1)(B); *see Cobb*, 250 F.3d at 349 ("Sentencing guidelines should be read as they are written."). Since neither determination was in error, the district court appropriately looked to the Homicide Guidelines to determine which offense was most analogous to Harris's conduct. We now do likewise in review of the district court's selection of second-degree murder as the "most analogous offense guideline."

*2. Analogous Offense Guidelines Under U.S.S.G. § 2A1*

To apply an enhancement under § 2A1, the trial judge must find that the defendant's conduct satisfied the definition of the cross-referenced offense by a preponderance of the evidence.[4] *See United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006); *United States v. Milton*, 27 F.3d 203, 206 (6th Cir. 1994). The district court had four choices for the most analogous homicide: first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter. U.S.S.G. §§ 2A1.1–2A1.4. The court selected second-degree murder, which federal law defines as an

---

[4]Harris incorrectly argues for a higher burden of proof based on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000). *Alleyne* held that any fact that increases the statutory minimum for an offense must be submitted to a jury and proven beyond a reasonable doubt. 133 S. Ct. at 2160. The judicial fact-finding here did not affect the statutorily authorized penalties, so *Alleyne* is not implicated. Moreover, this court has repeatedly rejected the clear-and-convincing standard articulated in *Mezas de Jesus* and other cases—settling instead on proof by a preponderance of the evidence. *United States v. Christopher*, 91 F. App'x 471, 475 (6th Cir. 2004); *United States v. Mayle*, 334 F.3d 552, 556–57 (6th Cir. 2003).

unlawful killing with malice aforethought, but without premeditation or another statutorily-defined requirement. *See* 18 U.S.C. § 1111(a); *Milton*, 27 F.3d at 206.

Harris argues that because he was convicted only of a facilitation offense in state court, a cross-reference to a specific-intent offense was improper. Specifically, he argues that the district court made no real findings of fact to support the cross-reference to second-degree murder. Harris did not object on the basis of insufficient fact-finding below, so we review the court's sentencing for plain error. *See United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009) (holding that plain-error review applies where, as here, "a party answers the *Bostic* question in the affirmative, but at such a high degree of generality that the district court has no opportunity to correct its purported error"). To prevail on this claim, Harris must "show (1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) [that] affected the fairness, integrity, or public reputation of his judicial proceedings." *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010).

### a. Error

To the extent Harris asserts that the district court was barred at the outset from applying the cross-reference to second-degree murder on account of what he was and was not convicted of in state court, his claim fails. True enough, a Tennessee jury found that the state had failed to prove beyond a reasonable doubt that Harris intended to commit murder or an underlying felony to support felony murder. But a sentencing court may consider even acquitted conduct, so long as it is proven by a preponderance of the evidence. *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc).

- 14 -

However, to the extent Harris argues that the district court erred by making insufficient findings of fact to warrant the cross-reference to second-degree murder, his claim is meritorious. Federal Rule of Criminal Procedure 32(i)(3)(B) requires the district court at sentencing to rule on "any disputed portion of the presentence report or other controverted matter." We have held that once a defendant calls a PSR dispute to the court's attention, "the court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (quoting *United States v. Solorio*, 337 F.3d 580, 598 (6th Cir. 2003)). "Rather, the district court must *actually find facts*, and it must do so by a preponderance of the evidence." *Id.* at 416. We require "literal compliance" with this Rule. *Id.* at 415 (quoting *United States v. Treadway*, 328 F.3d 878, 886 (6th Cir. 2003)).

Here, Harris disputed the element of intent prior to and during his sentencing hearing. But the district court made no findings of fact relevant to the mens rea required to prove second-degree murder. Instead, the court merely parroted the PSR in concluding that Harris "put into motion and actively participated in a series of events that led to the death of the victim." Harris may well have done so, but absent a finding that he did so with "malice aforethought," selection of second-degree murder as the "most analogous offense" to cross-reference was in error. *See Milton*, 27 F.3d at 208 ("We are disturbed by the district court's failure to make any findings relevant to the elements of second degree murder. The court did not find that [the defendant] acted with malice aforethought—in fact, no reference to malice aforethought appears within the sentencing transcript. District courts should consider specifically the elements of cross-referenced conduct.").

The court's emphasis on the fact that Harris "put into motion" a series of events that led to Wheeler's death is understandable, albeit misplaced in the context of finding specific intent or selecting the most analogous offense to cross-reference. In *United States v. Thomas*, 280 F.3d 1149 (7th Cir. 2002), the Seventh Circuit relied on the "put into motion" language in reference only to the threshold inquiry of whether *any* homicide cross-reference was warranted—i.e., only to determine "if death resulted" from the defendant's possession of a firearm in connection with another offense. *Id.* at 1155. The Seventh Circuit did not rely on this language to support a cross-reference to second-degree murder or to any other Homicide Guideline that requires specific intent. *Id.* Consequently, the district court's reliance on this language to support the cross-reference to second-degree murder, without a concordant factual finding of malice aforethought, was in error.

### b. Error that was "Obvious or Clear"

The district court committed an error that was "obvious or clear." When a sentencing court commits a legal error, we consider it "obvious or clear" if it is "contrary to clearly established law at the time of appeal." *See United States v. Ferguson*, 681 F.3d 826, 833 (6th Cir. 2012) (citing *Johnson v. United States*, 520 U.S. 461, 468 (1997)). Here, the court erred by applying a sentencing cross-reference to an offense that requires malice aforethought without making any factual findings to that effect. This error was "obvious or clear" because it had been clearly established at the time of sentencing that a district court must make such factual findings on disputed matters by a preponderance of the evidence. *See, e.g.*, *White*, 492 F.3d at 415–16; *Treadway*, 328 F.3d at 885–86. The district court failed to do so, thus satisfying the second prong of plain-error review.

- 16 -

### c. Error that Affected Harris's Substantial Rights

This district court's error affected Harris's substantial rights. "A sentencing error affects a defendant's substantial rights when there is a reasonable probability that, but for the error, [the defendant] would have received a more favorable sentence." *United States v. Wilson*, 614 F.3d 219, 223 (6th Cir. 2010). Had the court cross-referenced Harris's felon-in-possession offense to the lesser analogous homicide offense of voluntary manslaughter, his advisory Guidelines range would have been reduced to 92 to 115 months of imprisonment.[5] Or, had the court cross-referenced Harris's offense to the lesser analogous homicide offense of involuntary manslaughter, his advisory Guidelines range could have been reduced to 37 to 46 months of imprisonment.[6] Either alternative shows there was a reasonable probability that, but for the court's error in applying the second-degree murder cross-reference, Harris would have faced a lower sentence than the effective Guidelines range of 120 months' imprisonment that the court imposed. Accordingly, the court's error affected Harris's substantial rights.

---

[5]The Guideline for voluntary manslaughter mandates a base offense level of 29. U.S.S.G. § 2A1.3. Harris's three-level reduction for acceptance of responsibility would have then resulted in a total offense level of 26. When paired with his criminal history category of IV, the resulting Guidelines range was 92 to 115 months of imprisonment under the 2011 Sentencing Guidelines. *Id.* § 5A.

[6]The Guideline for involuntary manslaughter provides alternate base offense levels of 12, 18, and 22, depending on whether the defendant's conduct was negligent, reckless, or involved the reckless operation of a means of transportation. U.S.S.G. § 2A1.4. If the court had concluded that Harris was merely criminally negligent, then his Guidelines sentence under § 2K2.1 would have controlled because it provided a greater base offense level than that calculated under the cross-reference to involuntary manslaughter. *Id.* § 2K2.1(c)(1)(B). With a base offense level of 20, a three-level reduction for acceptance of responsibility, and a criminal history category of IV, Harris's Guidelines range would have been 37 to 46 months of imprisonment under § 2K2.1. *Id.* § 5A.

The government incorrectly argues that the district court's sentence can be sustained as harmless error under the felony-murder doctrine. According to the government, the Guideline offense of *first*-degree murder was the most analogous to Harris's conduct. The government notes that Harris was convicted in state court of facilitating felony murder in relation to a kidnapping, and that federal law provides that every murder committed during the perpetration of, or attempt to perpetrate, a kidnapping constitutes murder in the first degree. *See* 18 U.S.C. § 1111(a) (enumerating certain felony murders that constitute first-degree murder). It follows, the government contends, that because the 120-month statutory maximum sentence would control under a cross-reference to either first- or second-degree murder, Harris cannot show that the court's error in selecting second-degree murder affected his substantial rights.

Application of the cross-reference to first-degree murder *could* have been justified under the felony-murder doctrine if the district court had found that Harris committed murder in the perpetration of, or attempt to perpetrate, a kidnapping. *See* U.S.S.G. § 2A1.1(a) & cmt. n.1; 18 U.S.C. § 1111(a). But here again, the court made no such finding. Merely reciting Harris's conviction for *facilitation* of felony murder fell short of making a factual finding that Harris committed felony murder. This is so because felony murder still requires intent to carry out the underlying felony, even if no intent is required to commit the murder. *See United States v. Saba*, 526 F. App'x 489, 490 (6th Cir. 2013); *Staton v. United States*, 899 F.2d 1222, at *2 (6th Cir. 1990) (unpublished table decision); *see also United States v. Chischilly*, 30 F.3d 1144, 1159–60 (9th Cir. 1994) ("Unlike second degree murder, conviction for felony murder under 18 U.S.C. § 1111 requires the commission of an enumerated felony with the requisite *mens rea* for the underlying offense.").

Harris's conviction for facilitation of felony murder in relation to a kidnapping carried with it no such finding of intent to commit a kidnapping. *See State v. Ely*, 48 S.W.3d 710, 719–20 (Tenn. 2001) (citing Tenn. Code. Ann. §§ 39-13-202, 39-13-403) (explaining that the offense of facilitation of felony murder requires proof that "the defendant knew that another person intended to commit the underlying felony, *but he or she did not have the intent to promote or assist the commission of the offense*" (emphasis added)). In fact, the jury instruction from Harris's state court trial, in which he was found not guilty of the greater charge of felony murder, suggests that he lacked the intent to commit or attempt a kidnapping. ("For you to find the defendant guilty of [felony murder–kidnapping], the state must have proven beyond a reasonable doubt . . . that the defendant intended to commit the alleged Kidnapping."). We note again that the district court was not prohibited from finding that Harris possessed the intent to commit or attempt a kidnapping based on his lack of conviction in state court. *See White*, 551 F.3d at 385. But here, the district court made no factual findings to the contrary that would support cross-referencing the Guideline to first-degree murder under the felony-murder doctrine.

Consequently, the district court's error in applying the cross-reference to second-degree murder and imposing an effective Guidelines range of 120 months' imprisonment did not constitute harmless error, as the government suggests. Absent a finding, by a preponderance of the evidence, that Harris committed or attempted to commit a kidnapping, any cross-reference to first-degree murder would have been equally unwarranted. We decline to make those factual findings for the first time on appeal. *See United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007).

### d. Impact on the Fairness, Integrity, and Public Reputation of the Proceedings

Finally, the district court's error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. "We have held that a sentencing error leading to a more severe sentence diminished the integrity and public reputation of the judicial system as well as diminished the fairness of the criminal sentencing system." *United States v. Doyle*, 711 F.3d 729, 736 (6th Cir. 2013). Because the length of Harris's sentence is likely more severe than if the district court had followed the correct procedures, the court's errors seriously affect the fairness, integrity, or public reputation of the proceedings. *See United States v. Inman*, 666 F.3d 1001, 1007 (6th Cir. 2012).

For these reasons, we hold that the district court committed plain error in applying a homicide cross-reference to second-degree murder absent factual findings to support the enhancement.

## C. Substantive Reasonableness

Because the district court erred with respect to the cross-reference to second-degree murder, thereby rendering Harris's sentence procedurally unreasonable, we do not reach the question of substantive reasonableness. *See United States v. Jones*, 641 F.3d 706, 713 (6th Cir. 2011); *United States v. Warshak*, 631 F.3d 266, 330 (6th Cir. 2010) (citing *Gall*, 552 U.S. at 51).

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's imposition of a sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and affirm the court's implication of the homicide cross-reference gateway provision under § 2K2.1(c)(1)(B). We vacate Harris's sentence and remand

to the district court for further factual finding and resentencing only with respect to what constituted

the "most analogous offense guideline" from § 2A1.