RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0010p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

                      *Plaintiff-Appellee,*

    *v.*

JOSEPH JERRY SWEET (14-1226); RONALD PATRICK COOK (14-1252),

                      *Defendants-Appellants.*

Nos. 14-1226/1252

_____

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:13-cr-00150—Robert J. Jonker, District Judge.

Decided and Filed:  January 20, 2015

Before:  SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

#### COUNSEL

_____

**ON BRIEF:**  Paul L. Nelson, FEDERAL PUBLIC DEFENDER'S OFFICE, Grand Rapids, Michigan, for Appellant in 14-1226.  Wendy R. Calaway, THE LAW OFFICE OF WENDY R. CALAWAY, CO., LPA, Cincinnati, Ohio, for Appellant in 14-1252.  Jennifer L. McManus, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

_____

#### OPINION

_____

ROGERS, Circuit Judge.  Defendants stole firearms and sold them, in part for drugs.  In calculating the sentencing guideline range for the federal crime of theft of firearms, the district court applied two four-level enhancements that are the sole bases for the present sentencing appeals.  One enhancement was for engaging in the trafficking of firearms, U.S.S.G.

§ 2K2.1(b)(5), and the other for using a "firearm . . . in connection with another felony offense"—the distribution of heroin—when the defendants traded the firearms for drugs, U.S.S.G. § 2K2.1(b)(6)(B). Defendants contend that application of both of the enhancements constitutes impermissible double counting because the two enhancements punish the same conduct—the act of selling firearms for drugs. But the enhancements address different aspects of the same action: selling firearms and purchasing drugs. Each could have occurred without the other: the stolen firearms could easily have been sold for cash, or the stolen firearms could have been kept and used to facilitate the purchase of drugs. There is accordingly no double counting, and both enhancements were properly applied. An additional argument by defendant Cook is also without merit, and the sentences must therefore be upheld.

Joseph Jerry Sweet and Ronald Patrick Cook broke into the businesses of two licensed firearms dealers and stole a total of thirty-two firearms. Law enforcement arrested Sweet and Cook separately, a few days after the second break-in. Both cooperated with authorities and admitted stealing the firearms and selling several of the guns for drugs and cash. Sweet reported that he had sold two of the guns to his "dope dealer" in exchange for $200 and three $20 rocks of cocaine base. Sweet also informed authorities that he and Cook had sold an additional eight firearms for approximately $500 and four grams of heroin. Cook helped authorities retrieve nine of the original thirty-two stolen firearms that he had either buried or stored with a friend.

Sweet and Cook each pled guilty to two counts of theft of firearms from a licensed dealer, in violation of 18 U.S.C. § 924(m). Presentence Investigation Reports recommended a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(A) for both Sweet and Cook, as well as the following enhancements: (1) six levels pursuant to U.S.S.G. § 2K2.1(b)(1)(C), because the firearm theft involved thirty-two firearms; (2) two levels pursuant to § 2K2.1(b)(4)(A), because the firearms were stolen; (3) four levels pursuant to § 2K2.1(b)(5), because Sweet and Cook trafficked firearms; and (4) four levels pursuant to § 2K2.1(b)(6)(B), because the firearms were used in connection with another felony offense, the distribution of heroin.

Sweet and Cook raised two objections to the Reports. First, both contended that the § 2K2.1(b)(6)(B) enhancement did not apply because "the firearms did not facilitate the drug offense; rather, if anything, the drugs facilitated the firearms offense." Second, they argued that

application of both the § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) enhancements constituted double counting because they were based on the same conduct—the firearms trafficking.

The district court addressed Sweet and Cook's arguments at both sentencing hearings. First, the court found that the § 2K2.1(b)(6)(B) enhancement was factually supported because,

> whether the parties got the guns because it was easy currency to get the drugs that they wanted, . . . or whether they had the guns in hand and then were happy to have not only cash but also drugs because they were going to get them anyway, either way . . . the firearm not only facilitated the [drug] offense, it was in fact a focal point of it.

Citing this court's recent ruling in *United States v. Harris*, 552 F. App'x 432 (6th Cir. 2014), the court determined that a defendant "can facilitate a drug felony by exchanging the weapons for drugs."

Second, the district court found both four-level enhancements applicable because they addressed "distinct purposes and distinct aspects of [the] conduct . . . at issue." During Sweet's hearing, the district judge explained:

> [T]he question is: What's new about the in-connection-with for four more points? And I think what's new is that the weapons when they were put in the hands of the drug dealer were traded in part for drugs. There was, in other words, a distribution of drugs, namely, the handing off of drugs from a drug dealer to both of these defendants. That's all that's necessary for distribution. And certainly the firearms and the exchange of those firearms were there to facilitate that. And you didn't even need that much under the 14(B) application note of the guidelines when the firearms and the drugs are in close proximity. That alone is enough to warrant the enhancement. And I think the reason for that is because trafficking all by itself is a dangerous thing. It puts it in the hands of somebody who is going to bring it into illegal commerce . . . . But when a drug distribution is added to the mix, even if it's in the form simply of trading firearms for the drugs, you have the capacity to mix the drugs and the firearms in a dangerous way. You also have the capacity to make the movement of the guns as well as the distribution of the drugs easier.
>
> I mean, one simple example, you know, why is it that restaurants would prefer to give you a coupon for some kind of food as opposed to a cash rebate? Why do manufacturers of automobiles prefer that kind of a . . . rebate or price discount as opposed to cash out the door? And in part that's because it's cheaper for them. It's cheaper for the producer if they can hand over portions of their goods than if they . . . have to hand over cash. And I don't think it's any different economically speaking in the drug trade. It's cheaper for a drug dealer to acquire those firearms

by making some of the consideration drugs.  It's just cost of goods sold then for the dealer as opposed to cash out the door.  So I think there is a rationale and reason for that added four points when as part of the trafficking . . . the drugs are exchanged, they are handed over.  Yes, that becomes a new offense, that becomes a new felony offense, namely, the distribution of those controlled substances, and I think it is [a] distinct, . . . separate aspect of the conduct.

After addressing their objections, the district judge calculated Sweet's guideline range to be 188 to 235 months, a range that included a two-level downward departure for Sweet's substantial assistance to the government.  The district judge then sentenced Sweet to 188 months of imprisonment.

In a separate sentencing hearing, the district judge calculated Cook's guideline range to be 151 to 188 months, after accounting for a three-level downward departure for Cook's substantial assistance to the government and a one-level downward departure for his efforts in returning the unsold firearms to the authorities.  The court then sentenced Cook to a term of 156 months of imprisonment.  On this appeal, Cook again claims that the § 2K2.1(b)(6)(B) enhancement does not apply, and both defendants challenge the simultaneous application of the § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) enhancements as double counting.

First, the district court correctly applied the § 2K2.1(b)(6)(B) enhancement, which provides, "[i]f the defendant . . . [u]sed or possessed any firearm or ammunition in connection with another felony offense[,] . . . increase by 4 levels."  Trading firearms for drugs constitutes "use [of a firearm] . . . in connection with another felony offense."  By agreeing to sell firearms to a drug dealer in exchange for money and heroin, Sweet and Cook facilitated the distribution of heroin; but for the transfer of guns to the drug dealer, the drug distribution would never have occurred.  Section 2K2.1(b)(6)(B) applies "if the firearm or ammunition *facilitated,* or had the potential of facilitating, another felony offense."  U.S.S.G. § 2K2.1 cmt. 14(A) (emphasis added); *see also United States v. Harris*, 552 F. App'x 432, 437−38 (6th Cir. 2014) (citing *United States v. Huffman*, 461 F.3d 777, 778 (6th Cir. 2006)).  In an analogous case in which the defendant had "traded his girlfriend's handgun to [a drug dealer] as collateral for $40 worth of cocaine," we held that § 2K2.1(b)(6)(B) was applicable.  *Harris*, 552 F. App'x at 433, 438.  We explained that the defendant had "used the firearm to facilitate a drug transaction" because, "but for the firearm, [the drug dealer] would not have sold" the drugs.  *Id.* at 438.

Cook's attempt to portray his "use" of the firearm as "merely coincidental to the underlying" drug offense, and thus outside the reach of the § 2K2.1(b)(6)(B) enhancement, is not persuasive. Though it is true, as Cook asserts, that the drugs facilitated the firearm trafficking by serving as a form of consideration, it is equally true, as discussed above, that the firearms facilitated the heroin distribution.

Further, § 2K2.1(b)(6)(B) is not concerned solely with situations in which a firearm is used by a dealer to sell drugs, as Cook suggests. Comment 14(B) to U.S.S.G. § 2K2.1 indicates that, when the "other offense" is a drug trafficking offense, the § 2K2.1(b)(6)(B) enhancement applies whenever "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." Given such an expansive interpretation—an interpretation that does not require that the gun be used by a dealer to sell drugs—using a gun as an item of barter can facilitate a drug offense, and thus fall under the purview of § 2K2.1(b)(6)(B). As the Seventh Circuit explained, "[n]othing in the text of § 2K2.1(b)(6) suggests that the sentencing commission's choice of 'use' would exclude . . . trading a firearm for drugs. A firearm can be used as a form of currency to purchase an item in trade, or it can be used as a firearm." *United States v. Lang*, 537 F.3d 718, 721 (7th Cir. 2008) (internal citations omitted).

Second, Sweet and Cook's argument that application of both the § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) enhancements constituted impermissible double counting fails because the enhancements punished different aspects of the conduct. Section 2K2.1(b)(5) provides, "[i]f the defendant engaged in the trafficking of firearms, increase [the offense level] by 4 levels."

Here, it is true that both enhancements rely on the same conduct—the transfer of firearms to a drug dealer. However, the § 2K2.1(b)(5) enhancement punished Sweet and Cook for transferring guns to an individual who could not lawfully possess them, *see* U.S.S.G. § 2K2.1 cmt. 13, while the § 2K2.1(b)(6)(B) enhancement punished them for using the firearms to facilitate the distribution of heroin. Though "double counting occurs when precisely the same aspect of the defendant's conduct factors into his sentence in two separate ways[,] . . . no double counting occurs if the defendant is punished for distinct aspects of his conduct." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010) (internal quotations and citation omitted); *see also United States v. Perkins*, 89 F.3d 303, 310 (6th Cir. 1996). Because a court may impose two

enhancements arising from the same conduct, provided the enhancements "penalize distinct aspects of [a defendant's] conduct and distinct harms," *United States v. Smith*, 516 F.3d 473, 476 (6th Cir. 2008) (internal quotations and citation omitted), application of both the § 2K2.1(b)(5) and § 2K2.1(b)(6)(B) enhancements did not constitute double counting.

A recent Sixth Circuit case illustrates how distinct aspects of a defendant's conduct may factor into his sentence in multiple ways. In *Battaglia*, the defendant pled "guilty to two counts of knowingly receiving and distributing child pornography and to one count of possessing child pornography." 624 F.3d at 349. At sentencing, the court applied a five-level enhancement after it found that Battaglia had "[d]istribut[ed child pornography] for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." *Id.* (internal quotations and citation omitted). On appeal, the defendant argued that the trading enhancement constituted double counting "because both the enhancement and the two counts of knowingly receiving and distributing child pornography punish[ed] him for the same thing—distributing child pornography." *Id*. In rejecting the defendant's argument, we reasoned, "[i]n the present case, the base offense level punishes Battaglia for distribution regardless of whether he had an expectation of receiving an image in return, whereas the enhancement punishes him for trading or attempting to trade. Because the sentence punishes distinct aspects of his conduct, no double counting occurred." *Id.* at 352. Like the defendant in *Battaglia* who was punished for distinct aspects of his distribution of child pornography, Sweet and Cook were punished for distinct aspects of their firearms trafficking transaction. While the § 2K2.1(b)(5) enhancement punished Sweet and Cook for trafficking in firearms, "regardless of whether anything of value was exchanged," U.S.S.G. § 2K2.1(b)(5) cmt. 13(A), the § 2K2.1(b)(6)(B) enhancement punished them for facilitating drug distribution when they accepted heroin as consideration for the firearms. Consequently, no double counting occurred.

The judgment of the district court is affirmed.